# Moore *versus* Shultz.

Where real estate, covered by a mortgage, is conveyed in trust, for the use of a female and her heirs, with power to her to dispose of the same, by an instrument of writing, duly executed in the nature of a last will and testament, and during her life time she pays the interest on the mortgage, and after her death, the administrator of her estate applies to the Orphans' Court for power to sell the said estate for payment of debts, and in the list of debts is included the mortgage: a sale of the said premises, under an order of the Orphans' Court, made in pursuance of said petition, discharges the premises from the lien of the mortgage.

There being, in this case, *in esse*, a person seized to the use, a cestui que use, a well defined use, and a seizin, out of which it was to issue, the statute executes the use, and the property was vested in such female, from the date of the deed to her trustee.

A sale, under an order of the Orphans' Court, is a *judicial* sale.

ERROR to the District Court, *Philadelphia*.

Catharine Mary Moore, who survived Jane Moore, *vs.* William J. Shultz, administrator, &c., of Susan Shultz, terre tenant. *Scire Facias* on a mortgage.

This was a scire facias on a mortgage, executed by Robert E. Shultz to Catharine M. Moore and Jane Moore, to secure payment of his bond for $500, in one year, with interest. Defence was taken.

The only question was whether the sale, by order of the Orphans' Court, hereafter referred to, discharged the property from the lien of the mortgage upon it.

The following was a case stated for the opinion of the court:

*Moore* vs. *Shultz, &c.*—It is agreed that the following case be stated for the opinion of the court, to be considered as if the facts had been found by a special verdict, and to be subject to a writ of error by either party.

On the 26th April, 1832, John Rutherford and wife conveyed to Benjamin S. Shultz, in fee, a lot of ground on the west side of Juniper street, in the city of Philadelphia, reserving an annual ground rent of $60, payable half yearly.

On the 27th of October, 1832, Benjamin S. Shultz, conveyed the same lot to Robert E. Shultz, in fee, subject to the ground rent.

On the 21st of November, 1832, Robert E. Shultz executed the mortgaged upon which the *scire facias* issued, to secure payment of $500 in one year, with interest.

On the 12th of February, 1835, Robert E. Shultz and wife, in consideration of $1000, conveyed the premises to Benjamin S. Shultz, "in trust, for the use of Mrs. Susan S. Shultz, and her heirs, with power to the said Susan to dispose of the some, by an instrument of writing, duly executed, in the nature of a last will and testament."

During the lifetime of the *said Susan S. Shultz, she paid the interest on the* mortgage as it fell due.

The said Susan S. Shultz departed this life in the month of June, 1845, and letters of administration of her estate were granted to William S. Shultz.

On the 18th of September, 1846, the said William S. Shultz, administrator, &c., of Susan S. Shultz, presented his petition to the Orphans' Court for the city and county of Philadelphia, setting forth that the said Susan died seized of the said messuage and lot of ground, and that the personal estate was insufficient for the payment of debts; and prayed an order for the sale of the said real estate for the payment of debts, &c. Annexed to the petition was a list of debts of the intestate, among which the administrator included the said mortgage.

On the same day the said court granted the prayer of the petition, and ordered a sale of the premises.

[Moore *v.* Shultz.]

On the 21st of October, 1846, the said administrator, in pursuance of the same order, exposed the premises to public sale, when the same were sold to the said John Rutherford, for the price or sum of $1050, he being the highest bidder, &c. And the said administrator, on the 6th November following, made report of the said sale, which was thereupon, viz: on the same day and year, confirmed by the court; and security was ordered in the sum of $1400, which was afterwards duly entered and approved by the court; and the said John Rutherford paid to the said administrator the said sum of $1050, being the full amount of the purchase money aforesaid; and on the 25th of November, 1846, the said administrator executed a deed for the premises to the said John Rutherford, in fee.

On the ———— day of ————, 1846, the said administrator settled an account in the Register's office, in which he charged himself with the amount of the inventory, viz: $175.85, and the proceeds of sale of the real estate, viz: $1050, and claimed credit for divers payments, including $300 to the said John Rutherford for arrears of ground rent, leaving a balance in his hands of $617.06. An auditor was appointed to make distribution of the balance, who reported, that of the said balance the sum of $154 was payable to the said John Rutherford for the further arrears of ground rent, leaving the sum of $463.06 for the said mortgage.

The said sum of $463.06 was received by the mortgagee under an agreement, that it should be without prejudice.

The question for the opinion of the court is, whether the said mortgage has been discharged by the said sale and proceedings thereon, either in whole or in part.

If the court shall be of opinion with the plaintiff, then the judgment to be entered for the plaintiff for the sum of $————, upon the payment of which sum, the mortgage is to be satisfied of record.

If the court shall be of opinion with the defendant, then judgment to be entered for him.

The District Court gave judgment for the defendant, deciding that the mortgage had been discharged by the sale.

The case was argued by *T. J. Wharton*, for plaintiff in error, who was also plaintiff below:—

1. That on a sale, by order of Orphans Court, for payment of debts of a decedent, a mortgage given by such decedent for a debt of his own, is not discharged by such sale. He cited Molieres Lessee *vs.* Noe, 4 *Dallas* 450, and various other authorities.

2. That by such sale, a mortgage, by a preceding owner, is not discharged by such sale. That there is no authority in the Orphans' Court to order a sale for any other purpose, than to pay

the debts of the decedent; and that this was not a debt of *Mrs. Shultz.*

3. That Mrs. Shultz had not such an interest in the premises sold, as was within the provisions of the acts of Assembly, authorizing sale by order of Orphans' Court for the payment of debts.

That the use was not executed; *Crabb on Real Property*, sec. 1658, 55 *Law Library* 306, and cases there cited.

That the power did not merge in the fee; 1 *Sugden on Powers,* ch. 2. sec. 6, p. 104; 2 *Roper's Husband & Wife,* 102.

If Mrs. Shultz had only an estate for life, with a power of appointment, which she did not exercise, then the purchaser derived no title, and the property remains subject to the mortgage.

*Barclay* and *Williams*, contra.

The opinion of the court was delivered April 22, by

COULTER, J.—The use was executed by the statute. Benjamin S. Shultz, his heirs and assigns, were seized to the use of Mrs. Shultz, her heirs and assigns. There was in *esse*, a person seized to the use, a *cestui que use*, a well defined use, and a seizin, out of which it was to issue. And, where these exist, the statute executes the use, and the property in question must be considered as vested in Susan S. Shultz, from the date of the deed in February, 1835, to Benjamin S. Shultz. It is a matter of no moment in this case that the deed contained a power to Susan to dispose of the estate, by an instrument of writing, in the nature of a will; because, as the deed vested the fee in her, the power could add nothing to it, and did not detract from a power to limit its extent; and was intended simply to authorize her to dispose of the estate if she died during coverture. As she became a widow, however, the power became merely useless or inoperative.

The remaining question to be decided, is whether a sale of the estate by order of the Orphans' Court, upon the petition of the administrator of Susan Shultz, for the payment of debts, divested the lien of a mortgage on the premises, executed by Robert E. Shultz, before he conveyed to Benjamin for the use of Susan. I shall consider the question as if Susan had executed the mortgage herself, because after she became seized and possessed of the estate, she paid the interest on the mortgage, and because so far as this estate is concerned, it was as thoroughly her debt, as if given by herself. She held subject to it, and it was a lien on the estate in her hands, and in point of fact, it was enumerated as her debt, in the petition for sale of the premises. The *obiter dictum* of the court in the case of Moliere *vs.* Noe, 4 *Dallas* 450, that mortgages were not discharged by an Orphans' Court sale, was doubtless recognized in several subsequent cases, as the established rule on the subject. But the point was never expressly adjudicated in any case. I may observe that during that time the law was un-

settled, except by mere *dicta.* The distinction taken by Chief Justice Tilghman, in Moliere *vs.* Noe, between judgments and mortgages, to wit, that by the latter the fee was conveyed, never could have been entitled to much weight, in Pennsylvania; because here a mortgage has always been considered merely as a security for the payment of a debt: 7 *Serg. & Rawle* 419; and as to third persons, the mortgagor has been considered the real owner: 1 *Binn.* 177. The interest of the mortgagee cannot be levied on and sold on a judgment against him. And yet, in Pennsylvania, every interest of a debtor in real estate, may be levied upon and sold. It is a lien on the estate of the mortgagor, and not a lien on any estate vested in the mortgagee. In Bowers *vs.* Oyster, 3d *Penn. Rep.* 240, much discredit is thrown on Moliere *vs.* Noe, and the above views corroborated. In Hoover *vs.* Shields, 2d *Penn. Rep.* 135; McGrew *vs.* McLanahan, same book; and Corporation *vs.* Wallace, 3 *Rawle* 109, it was ruled that the lien of a mortgage was divested by a judicial sale on a junior judgment. These decisions produced the act of assembly, which enacted that a sale made on a junior judgment should not, therefore, divest the lien of a prior mortgage. And it is by this act, and its supplements, that a mortgage enjoys any immunity beyond that of a judgment, as a lien. But the exempting statutes do not reach or apply to judicial sales made by order of the Orphans' Court. And this enforced the learned counsel for the plaintiff strenuously to contend that an Orphan's Court sale was not a judicial sale. But this notion cannot be entertained by the court. It is not a private sale. It is not a sale by the administrator, for he has no authority whatever to sell, *virtute officii,* real estate. It is a sale made by authority and direction of the Orphans' Court, which prescribes or ought to prescribe the time, manner, and conditions of the sale; and upon the report of the administrator, they determine whether their directions have been complied with, and whether or not the sale shall be confirmed. I am at a loss to imagine what can constitute a judicial sale if this does not, provided it be admitted that an Orphans' Court is a judicial tribunal; which, I presume, could not be denied. Sales of this kind have been denominated judicial sales, in many of the decisions of this court; and substantially decided so to be in others, which it is not necessary to enumerate. And such I take the general understanding to be, of the bench and the bar. If, then, it be a judicial sale, and a mortgage be the *debt* of the mortgagor, its lien is divested. The case of Custer *vs.* Detterer, 3 *Watts & Serg.* rules that the purchaser at an Orphans' Court sale takes the estate discharged from all debts due by the deceased. And the act of assembly is to the same effect.— Purchasers at judicial sales hold the lands free from the debts of the person as whose estate it was sold, and from liens against a previous owner: Luce *vs.* Snively, 4 *Watts* 397. Liens, the ex-

[Moore *v.* Shultz.]

tent or amount of which cannot be rendered certain, are not divested, because they could not be paid out of the amount produced by the sale.   And liens expressly created by act of assembly, (such as the interest of the widow in one third of the valuation of land taken by an heir at the appraisement, and the lien or interest of the heirs for that third, at the death of the widow,) are not divested; because, by the terms of the act, the lien continues, into whose hands soever the land may go, until it is paid; and as it cannot from its very nature be paid out of the purchase money, the lien must remain.   These are the only exceptions, and are so peculiar in their nature as plainly to point every purchaser to their continued existence.   It is, doubtless, the interest of the community, (for all men must die,) that the estates of decedents should be brought into compact administration, for the payment of all their debts.   It is for the interest of their creditors and their heirs; and the Orphans' Court, from the nature of its duties, seems best adapted to supervise and control this administration. Hence, no doubt, were enacted the 35th and 36th sections of the act of 24th February, 1834, by which it is enacted that when it *should* appear to the satisfaction of the court of Common Pleas, that the personal assets of the decedent are not sufficient to discharge an execution issued upon a judgment obtained against the decedent in his life time, or against his executors or administrators after his death, the court shall stay all proceedings and direct and compel the executor or administrator to apply to the Orphans' Court for an order or decree to sell the real estate, and pay or apportion the assets of the real and personal estate to the discharge of all just demands upon the estate.   And this proceeding would effectually disenthral the sale from any supposed continuing lien of a mortgage, and sufficiently evinces the spirit of our legislature, with respect to Orphans' Court sales.

I lay no stress whatever on the argument that the Orphans' Court sale is of less publicity and solemnity than the sale by a sheriff.   On the contrary, if the court does its duty, which is not to be doubted, the notice of sale is more full and ample in the Orphans' Court sale than that made by the sheriff; and the security to the creditor is as great, and the means of enforcement more prompt and efficacious than in a sheriff's sale.   That, however, lies within the province of the law-making power.   By reversing the judgment below, instead of promoting equity and establishing justice, we would disturb many titles honestly acquired, and break up the settled practice throughout the state.   We are of opinion that a sale by virtue and authority of a decree of the Orphans' Court for the payment of debts of a deceased person, divests the lien of a mortgage as effectually as that of a judgment; and the other debts which are made a lien by act of assembly; and that the judgment of the court below, in favor of the defendant in the case stated, is right.                    It is therefore affirmed.