# Young *v.* United States Housing Corporation of Penna., Appellant.

*Real estate—Sales—Agreement of sale—Compliance—Rescission.*

In an action to recover money paid on account on the sale of
real estate, it is error to direct a verdict for the plaintiff, where
the evidence fails to establish that the vendee before attempting
to rescind the contract placed the vendor in the same position he
was before the sale.

In such action the very first thing to be done, after showing
that the plaintiff parted with a valuable consideration in pursu-
ance of the contract alleged, is to show that the plaintiff has re-
scinded the contract by doing or offering to do all that was necessary
and reasonably possible to restore the parties to the condition in
which they were before the contract, and then show that he had
good ground to rescind it. This is the order demanded by the very
nature of the action.

Where one has agreed to purchase certain real estate from a
"selling agent," and has entered into possession and granted a lease
thereon he cannot rescind and at the same time retain possession.
Possession cannot be delivered to persons who had no authority to
accept the rescission of the contract.

Under such circumstances plaintiff's case fails for want of an
offer to restore the status quo and there can be no recovery.

Argued April 14, 1925. Appeal No. 134 April T.,
1925, by defendant from judgment of C. P. Erie
County, May T., 1921, No. 357, in the case of Ernest A.
Young v. United States Housing Corporation of Penn-
sylvania. Before Porter, Henderson, Trexler,
Keller, Linn and Gawthrop, JJ. Reversed.

Assumpsit to recover money paid on account in the
sale of real estate. Before Rossiter, P. J.

The facts are stated in the opinion of the Superior Court.

The Court directed a verdict in favor of the plaintiff in the sum of $1302.44, and judgment was entered thereon. Defendant appealed.

*Errors assigned* were in giving binding instructions in favor of the plaintiff, and refusal of defendant's motion for judgment non obstante veredicto.

*John B. Brooks,* and with him *Charles H. English* and *Frank B. Quinn,* for appellant.—The case was for the jury and it was error for the court to decide it as a matter of law: Turnpike Company v. The Commonwealth, 2 Watts 433; Reed v. Elder, 62 Pa. 308; Philadelphia v. Bilyeu, 36 Pa. Superior Court 562.

The selling agent to whom the alleged offer to return the property was made had no authority to accept the rescission of the contract: Mange-Wiener Company v. Patton Worsham Drug Company, 27 Pa. Superior Court 315; American Sales Book Company v. E. G. Whitaker, 37 L. R., Ann., 91; Jamestown & Franklin R. R. Co. v. Egbert, et al., 152 Pa. 53; Gilmore Drug Company v. Goldsmith, 79 Pa. Superior Court 149; Edmundson v. Singer Sewing Machine Company, 51 Pa. Superior Court 545.

The contract between the parties did not relieve the plaintiff from restoring, or offering to restore, possession of the property to the defendant as a condition precedent to recovering back the purchase price: Wright v. Bristol Patent Leather Company, 257 Pa. 552; Deforest v. Finn, 67 Pa. Superior Court 360; 13 Corpus Juris 608.

*Charles B. Prichard* for appellee.

OPINION BY LINN, J., July 9, 1925:

This appeal is from judgment on a verdict directed for plaintiff in his suit to recover back his payments made on account of the purchase price of real estate. He had agreed to buy, and appellant had agreed to sell to him four parcels of real estate in Erie, Pennsylvania, pursuant to four instruments executed by them, dated December 1, 1920, (substantially alike for the purposes of this appeal). Each provided: "It is agreed that the seller shall give a good and marketable title to said property hereinabove described, and upon failure to do so all payments made as aforesaid shall be returned to said purchaser, and this contract shall thereupon become null and void, and the seller shall not be liable for the costs of any abstract, certificate, or report upon title procured by the purchaser; nor shall said seller be liable to the purchaser for damages on account of the failure of the seller to give good title as aforesaid." In his brief, filed in this court, appellee contends that the suit is based on breach of that provision and not on his alleged rescission of the contract. In his statement of claim he averred that on the 9th of April, 1921, he demanded the return to him of what he had paid and notified defendant "that he, the plaintiff, by reason of the breach of contract as aforesaid [the provision quoted] on the part of defendant had rescinded and revoked the contract which had been entered into by and between them as aforesaid." He brought suit April 28, 1921; and as his statement of claim alleged no offer to restore the status quo, he amended, in January, 1924, by averring that on the execution of the contract he entered into possession of the premises and there remained "until the date of rescission as above set forth, and on said date as well as different times thereafter, the plaintiff offered to redeliver possession of said" premises but that defendant refused to accept them. Defendant's supple-

mental affidavit denied that allegation and also averred that plaintiff retained possession until October 14, 1921. Plaintiff's averment and defendant's denial made the important issue of fact for trial. The amount paid was not disputed.

There is no evidence that defendant did not have a good and marketable title to the property, or that it was unable to give one, so that the difference between the parties resulted from another cause,—delay in performance,—plaintiff simply declined to wait longer for the deeds. The record contains a letter from defendant to plaintiff dated October 30th, transmitting the drafts of the contracts to him for execution, and stating that after he has executed them, (they were executed by him December 1st) they must be sent to Washington for approval and execution by defendant; that letter also states "Washington office advises deeds will be delivered within thirty to sixty days after signing of these contracts;" the letter was signed by one Howe, describing himself as "selling representative." And it will be observed (though the importance of the matter will appear later) that while called a "selling representative," Howe did not even have authority to sell; apparently he could only seek prospective buyers; the agreement to buy, "must be sent to Washington for approval and execution."

While the contracts did not entitle plaintiff to possession before delivery of the deeds and payment as specified, the evidence shows that he received the keys and placed the houses in the hands of a real estate agent to be rented on plaintiff's behalf; this agent put up signs and rented two out of the four, one for a year beginning April 1, 1921, and the other for a like term beginning May 1, 1921. The tenant in the former paid rent at $25 a month for two months to plaintiff's agent and continued in the occupation of the premises though for how long the record does not state; the other tenant paid his agent $25 during the month of

May and also continued in occupation; this rent was still in the hands of his agent when the case was tried. If a purchaser by articles, not entitled to possession until payment and delivery of the deed, without specified agreement on the subject, obtains possession, he is a tenant at will: Bardsley's Appeal, 20 W. N. C. 90.

The agreements provide that after the first payment, the balance shall be paid in specified monthly installments, the first due January 1, 1921, and that the purchaser shall deliver notes therefor secured by mortgage or deed of trust. By check dated February 3d, plaintiff paid an amount apparently covering the installments due January 1st and February 1st. He did so, although on January 27th he wrote to defendant demanding that his first payment of December 1st be returned to him for reasons stated in a prior letter which is not in the record; defendant replied with a denial of his request. On March 24th he wrote defendant, "I have been waiting for you to live up to what you wrote me in regard to delivering me the deeds to the property in question. When will you deliver the deeds and accept the mortgage? You can readily understand that you have not delivered any tangible property up to this time." We note in passing that up to that time there had been no rescission by the plaintiff, and that the installments due March 1st were unpaid; neither that nor the April 1st installment was paid. On February 17, 1921, defendant wrote to plaintiff acknowledging his February payments and stating, concerning the deeds and mortgages, "that the same are in process of being printed at this time and will no doubt be in your hands shortly." Next we have plaintiff's letter of April 9th,—the date of rescission specified in the statement of claim; "In your contracts with me you agreed to deliver a warranty deed upon the delivery of Liberty Bonds to you. You have failed to do this after repeated requests by letter to you. As you have failed or neglected to live up to

your contract, I will now ask you to return me all sums paid on account of these contracts and this demand is based partly upon the clause in the contracts which reads in part 'and upon failure to do so all payments made as aforesaid shall be returned to said purchaser.' '' On April 28th he wrote, "Demand is again made that you return to me all sums that I have paid you, for the reason that you have committed a breach of the several contracts that you made with me. Advise me by return mail at......."

His letters contain no offer to surrender possession of the premises. If a vendee would rescind his contract and entitle himself to recover the consideration paid by him, he must place the vendor in the same situation that he was in before the sale, as nearly as that is possible: Turnpike Co. v. Com., 2 W. 433, 434; Beetem v. Burkholder, 69 Pa. 249, 253; Pearsoll v. Chapin, 44 Pa. 9, 12; Wright v. Bristol Leather Co., 257 Pa. 552, 557.

The burden of proving his averments of the facts necessary to entitle him to rescind was on plaintiff. To do so, he himself testified and he called his attorney as a witness. Plaintiff did not prove his allegation as of April 9th; he did testify, however, that he "called on Mr. Howe [the 'selling representative'] a few days prior to the bringing of this suit and told him that I had come over from Cleveland to get the deeds for which I had signed contracts. He told me that he did not have the deeds. I told him that the contract specifically stated that I should have the deeds delivered to me at the time I delivered the Liberty Bonds and the signing of the contracts and it was now many weeks since that date and I had been unable to get the deeds. He told me that he did not have any deeds. I said, 'if I want to sell that property I can't sell it because I have no deeds.' He said that all could be arranged with the United States Housing Corporation. I replied that it was absurd for me to attempt to sell

property without having any deeds to deliver and further that the contracts for purchase 'require me to pay interest and I am prepared to pay the total amount due and stop the interest.' He said he could not deliver any deeds, or words to that effect. I then said, 'I will not carry out this contract any further and I now demand that you take these houses back and return to me the bonds or money for the bonds, and I will see that you get the key to the houses.' He then said, 'Well, you can go and sue it.' I said, 'all right. I don't propose to be swindled out of the $1,400 or $1,500,' and I proceeded to an attorney's office to sue him.'' Plaintiff's attorney testified that on the 20th of April plaintiff called on him and after his interview, he, the witness, called on Mr. Howe and ''told Mr. Howe that Mr. Young had conferred with me about it, and I asked him if he would not return the bonds or the money, that we would not further go on with this contract, and I told him that the property was out there, that all he had to do was to take possession of it, that we wouldn't go on with it. Mr. Howe told me Mr. Young had been very fussy about it and that they had words that were not pleasant. I said to Mr. Howe, 'What is the trouble that Mr. Young has not received his deeds?' I had the copies of the contracts with me. He said, 'the difficulty has been that we have not been able to get a form of deeds and mortgages approved at Washington'......I asked Mr. Howe if there was something could be done to get it straightened out. He said absolutely nothing could be done as far as he was concerned, and with that I left his office. That is substantially the conversation we had at that time.'' This witness said that he received the keys on June 29, 1921, from plaintiff's real estate agent and he retained them until November 4th, when Howe got them.

With that evidence before the court, the verdict for the plaintiff was directed.

Appellant makes several objections to that action. First,—that, while denying its sufficiency, the truth of the oral evidence was to be determined by the jury and not by the judge; second,—that Howe's limited authority was known to plaintiff and was insufficient to authorize him to accept rescission of the contract or surrender of possession; third,—that apart from Howe's lack of authority, the offer to restore the status quo was insufficient in law.

First. As the evidence of plaintiff and the witness was oral (and inconsistent with some of the documentary evidence), it was the duty of the jury, under proper instructions, to determine from the evidence what the fact was: Phila. v. Bilyeu, 36 Pa. Superior Ct. 562, 565; Nydes v. Royal Neighbors, 256 Pa. 381, 385. If there were no other objection raised, that misdirection would require a new trial, but there is more serious error.

Second. The record shows that the contract of Howe's employment was in writing and that it was not produced; in its absence we have only evidence showing that he was, as designated by the contracts of sale and at the foot of appellant's letters, a "selling" agent; reference has been made to the letter to plaintiff advising that even after contracts of sale were made by this agent they must be approved by the Washington office. Such limited authority did not authorize him to accept the rescission of the contract or the surrender of possession of the premises; an agent with power to lease land and collect rents, has no authority to accept surrender of the term: Edmundson v. Machine Co., 51 Pa. Superior Ct. 545, 548, 549. A credit man with authority to extend credits, has by that alone, no power to cancel securities or give up rights or interests of his principal: Gilmore Drug Co. v. Goldsmith, 79 Pa. Superior Ct. 149, 152. In Mange-Weiner Co. v. Drug Co., 27 Pa. Superior Ct. 315, at 319, we said: "There was no evidence of express au-

thority in Herz to rescind the contract. No implied authority to rescind and accept a return of the goods is to be inferred from the mere fact of his authority to sell: Meechem on Agency, sec. 360.'' As the evidence shows Howe lacked that authority, plaintiff's case fails for want of an offer to restore the status quo.

Third. That offer, as described in the evidence, does not comply with the rule stated long ago in Pearsoll v. Chapin, supra, ''In an action......for the purpose of recovering back anything, as on the rescission of a contract, the very first thing to be done after showing that the plaintiff parted with the thing in pursuance of the contract alleged, is to show that the plaintiff has rescinded the contract by doing or offering to do all that was necessary and reasonably possible to restore the parties to the condition in which they were before the contract, and then to show that he had good ground to rescind it. This the order demanded by the very nature of the action.'' See also Elzea v. Brown, 59 Pa. Superior Ct. 403, 408; Textile Co. v. Cohen, 75 Pa. Superior Ct. 478, 482.

When plaintiff called on the selling agent, perhaps on April 20th, and was told that the agent did not have the deeds, plaintiff said that he would not carry out the contract, and demanded ''that you take these houses back and return to me the bonds, or the money for the bonds, and I will see that you get the key to the houses.'' Now, apart from Howe's lack of authority, was that an offer to surrender possession? At that time, plaintiff had a tenant occupying one of the houses under a lease for a year's term and his agent was endeavoring to rent the others. Plaintiff at least should have offered an assignment of the lease and revoked his agent's authority; instead of doing that, he permitted his agent to continue acting for him and thereafter let another house for a year beginning May 1st. In his written demand of April 28th there is not a word about surrendering possession or assigning the

leases then in existence. He could not rescind and retain possession.

The testimony of the witness who interviewed Howe on April 20th, on plaintiff's behalf, amounts to less; he stated: "I told him [Howe] that the property was out there and all he had to do was to take possession of it . . .. . . . ." But "to take possession of it" involved negotiations (and perhaps possessory proceedings) with plaintiff's tenants and plaintiff's real estate agent which defendant was not bound to undertake.

The court below in its opinion refusing defendant's motion for judgment n. o. v., stated that there was no dispute that the deeds had not been delivered according to the contract; that the excuse offered for non-delivery was frivolous, and that "the proceedings are controlled by the contract between the parties and not the law." The court also considered that "it is undisputed that later on defendant took the keys and went into possession of the houses."

The phraseology of the contract and the conduct of the parties indicate that the deeds were not to have been delivered when plaintiff made his first payment and signed the contracts to buy, but that, on the contrary, they were to be delivered within a reasonable time afterward. Plaintiff could not rescind for want of delivery of the deeds, nor claim for breach of contract, "to give a good and marketable title" until after a reasonable time had elapsed and after demand therefor with notice that in default of deeds, the right of rescission would be exercised: Eberz v. Heisler, 12 Pa. Superior Ct. 388, 392; Burchfield v. Process Co., 45 Pa. Superior Ct. 254, 257; Holt's Ap., 98 Pa. 257. The record shows that plaintiff has not brought himself, either by his pleadings or proofs, within the provisions of the contract referred to by the learned trial judge.

It was error to direct a verdict for the plaintiff.

The judgment is reversed.