# Groskin, Appellant, *v.* Knight, Jr., et ux.

*Vendor and vendee—Contract—Title—Evidence—Certificate of title company—Custom—Pleading.*

1. An agreement for the conveyance of real estate, which provides that the title thereto shall be good and insurable at regular rates by any leading title company, does not, without more, make the settlement certificate of such a company conclusive evidence as to whether or not the title is good and insurable.

2. If, at the time fixed for settlement, the title is good and insurable at regular rates by a leading title company, the notations, then appearing on the settlement certificate, do not, under such a contract, conclusively determine, as between vendor and vendee, that it is not.

3. The effect to be given to the notations on such a settlement certificate, there being nothing in the contract regarding it, and

no law governing it, is to be determined by the prevailing custom, if any, at the place of performance.

4. If one party relies on a prevailing custom to establish his claim or defense, the other may, without having pleaded the custom, prove such other parts of it as are relevant to a determination of the controversy.

5. A custom which is inequitable and unreasonable is not enforceable.

Argued May 16, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 182, Jan. T., 1927, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1923, No. 2813, on verdict for defendants, in case of Lawrence Groskin v. Edward C. Knight, Jr., surviving executor of Edward C. Knight, deceased, and Edward C. Knight, Jr., et ux. Affirmed.

Assumpsit by vendee of real estate to recover deposit money. Before LEWIS, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned,* inter alia, was refusal of plaintiff's motion for judgment n. o. v., quoting record.

*Daniel C. Donoghue,* with him *Michael F. Donoghue,* for appellant.—The vendee is entitled to recover the deposit money.

The case is ruled by Baker v. Kaplan, 282 Pa. 239. See also, Wilson v. Getty, 57 Pa. 266.

Plaintiff vendee was entitled to a clear title at the time the deed was tendered: Graybill v. Ruhl, 225 Pa. 417.

*Owen J. Roberts,* with him *Mercer B. Tate, Jr.,* for appellees.—Appellees were ready and able and willing

to convey at settlement a title clear of encumbrance, good and insurable at regular rates by any leading title company, as they contracted to do: Medara v. DuBois, 187 Pa. 431; Western Nat. Bank's App., 102 Pa. 171; Solomon v. Loy, 82 Pa. Superior Ct. 99; Dunlap v. Reardon, 24 Pa. Superior Ct. 35; Patterson v. Arthurs, 9 Watts 152; Memmert v. McKean, 112 Pa. 315; Gilham v. Title Ins. & Trust Co., 203 Pa. 24; Perkinpine v. Hogan, 47 Pa. Superior Ct. 22.

OPINION BY MR. JUSTICE SIMPSON, June 25, 1927:

Plaintiff appeals from the judgment entered on a verdict in favor of defendants, in an action brought to recover back the hand money which he had paid when he signed an agreement for the purchase of their real estate. At the trial, he raised a number of objections to the title tendered him, but we shall consider only such of those in his brief in this court as are important to a proper determination of the case; and, in stating the facts as to them, shall set forth not only those regarding which there is no dispute, but also those which, though disputed, the jury, under the charge of the court, must have found to be true.

On March 23, 1923, by a writing duly executed, defendants agreed to sell and plaintiff to buy 1609 Chestnut Street in the City of Philadelphia, which was "to be conveyed clear of encumbrances, with title good and insurable at regular rates by any leading title company . . . . . . [settlement to be made] on or before September 22, 1923, said time to be of the essence of this agreement."

On May 22, 1923, plaintiff applied to the Real Estate Title Insurance and Trust Company, for insurance of the title. On May 24, 1923, he received its settlement certificate calling attention to a "coal vault under Chestnut Street walk." On September 11, 1923, as the result of a notice from plaintiff, the company added to its certificate "Girders carrying rear wall extend over party

line on the west......and the roof rafters of new building 1611 extend 4½ inches past the west party wall of 1609." At the same time, the company wrote to plaintiff saying "we have no means of confirming the alleged facts without an official survey of the premises in question. In the meantime, we will consider that the facts are correct, and note them on our copy of the settlement certificate."

Shortly after 4 P. M. of September 21, 1923, plaintiff gave to defendants a deed to be executed by them, a copy of the settlement certificate as above, and information that settlement would be made at the office of the title company at 11 A. M. the next day. This was the first notice defendants had of any of the alleged objections to the title, though for nearly four months plaintiff had in his possession two copies of the settlement certificate, containing the reference to the coal vault, and for eleven days they contained also the other matters which he had caused to be placed thereon, as above quoted. The custom in Philadelphia is for the title company to send two similar settlement certificates to the applicant for the insurance, so that the other party in interest may be promptly given one copy thereof, and thus have an opportunity to explain away, or have removed, all supposed objections to the title to be insured. Despite this custom, plaintiff kept both copies until less than nineteen hours before the time fixed for settlement; their delivery to defendants being made after the close of the official business hours of one day, and the time of meeting being fixed after the lapse of but two official business hours of the next day. This brief interval was too short to enable defendants to have the deed executed, one of the defendants being in Cape May, New Jersey, and another in Newport, Rhode Island. It was also too short to enable them to clear up the supposed objections to the title, which, in reality, were not defects at all, an executive officer of the title company testifying at the trial that it would have removed these objections from

the settlement certificate, if the company had known the true facts, later shown to it by a survey of the property, which was existing and obtainable prior to the day fixed for settlement, if defendants had been given a reasonable opportunity to produce it.

When the parties appeared at the company's office for settlement, plaintiff at once demanded an inspection of the deed for the property, and seemed greatly surprised to find that the one he had prepared had not been used, but that defendants had, themselves, at an earlier date, written and executed a similar one. No objection was made to this deed. After some consultation between plaintiff and the others interested with him in the purchase, they refused to make settlement because of the foregoing notations on the settlement certificate, and also declined to consider the matter further. Shortly thereafter they brought this suit.

The trial judge charged the jury that the coal vault did not constitute an encumbrance on the property; that plaintiff could recover, if his story as to the girders and rafters was true, or if, though untrue, he had given defendants a reasonable time to have them removed from the settlement certificate, and this was not done; but he could not recover if that story was untrue, and defendants could have had the supposed objections removed, if a reasonable time for the purpose had been but was not given, and if, also, defendants' property was, in fact, "clear of encumbrances, with title good and insurable at regular rates by any leading title company" at the time fixed for settlement. As already stated, the verdict and judgment were for defendants.

Plaintiff's main contention, squarely stated in his brief, is that both parties were bound by what appeared on the settlement certificate at the time they met for settlement, and hence, as the alleged objections were not removed at that time, plaintiff was entitled to recover, as a matter of law, irrespective of what the true facts then were, and of how readily they could have been

shown, had a reasonable time been given for the purpose. We do not so interpret the contract. Nothing is said in it regarding a settlement certificate. It only requires that the property shall "be conveyed clear of encumbrances, with title good and insurable at regular rates by any leading title company." The jury have found that, at the time of settlement specified in the agreement, the property was "clear of encumbrances," and the "title [was] good and insurable at regular rates" by the title company chosen by plaintiff.

The custom in Philadelphia, in cases where the title insurance certificate is to govern the transaction, was properly admitted in evidence without pleading it. Defendants did not need to prove it in order to sustain their contention, but plaintiff's case, as presented, depended on it. Having the burden of showing that he had the right to rescind the agreement,—no contract or law giving to the certificate the effect plaintiff claimed for it,—he was compelled to rely on the custom, since, without it, he would have had to prove that defendants' title was not "good and insurable at regular rates by any leading title company," and this, as the jury found, was not the fact. Not having so proved, his only other reliance was, necessarily, on so much of the custom as appertained to the effect to be given to the certificate. This opened the door to defendants to prove the rest of the custom, insofar as it appertained to the situation thus created by plaintiff, and this is all they did. In effect, their evidence said that plaintiff cannot claim, under the custom, that a conclusive effect should be given to what appeared on the settlement certificate, unless he gave to them, in acordance with the custom itself, a copy of the certificate, so that they may have a reasonable opportunity to show, before the time fixed for settlement, that the supposed objections to the title do not, in fact or law, affect it. To say that a vendee, who has applied for the insurance and obtained the settlement certificate, can hold back from the vendors, as

plaintiff here did, all knowledge of the supposed defects in the title, until it is absolutely impossible, in the short time remaining, to show that they are not defects at all, would make the custom so inequitable and unreasonable as to be outside the pale of the law (Dempsey v. Dobson, 184 Pa. 588; Albus v. Toomey, 273 Pa. 303), and plaintiff's contention, as to the effect of the settlement certificate, would wholly fail, since it would, in that event, have no support in contract, law or custom.

Baker v. Kaplan, 282 Pa. 239, greatly relied on by plaintiff, does not help him. It is based on the fact that the trust company, which had not been misled as to the facts, would not insure the title; here it would have insured the title, at the time fixed for settlement, if plaintiff had not misled it as to the facts then existing.

So far as regards the coal vault, plaintiff's brief does not allege that it was an encumbrance upon or affected the title to defendants' property, but only that the defense regarding it was inadmissible, since the title company called attention to the vault on the settlement certificate, and the notation was still there on the day named for settlement. What we have said above answers this contention also.

The judgment of the court below is affirmed.