## Shlak et ux. v. E. F. Houghton Building and Loan Association.

*Harry C. Liebman*, for plaintiffs; *William F. Leopold*, for defendant.

LEWIS, J., April 18, 1932.—This matter comes before the court on a motion to take off a nonsuit. The facts are briefly these: On September 15, 1930, the parties executed a written agreement for the sale by defendant and purchase by plaintiffs of premises No. 6165 Harley Avenue, Philadelphia. The vendee had five full months—until February 15, 1931—within which to make settlement. On October 13, 1930, defendant, through its solicitor, furnished to plaintiffs' attorney the information necessary to prepare the deed. This information disclosed the fact that the record owner of the property was William F. Leopold (solicitor for the defendant). On October 20, 1930, plaintiffs' attorney sent to defendant's solicitor the customary copy of the settlement certificate. This certificate called for the production at the settlement of a deed from *Leopold* to plaintiffs. On October 24, 1930, defendant's solicitor acknowledged receipt of the settlement certificate and requested that the deed be sent him for approval. No reply was made to this letter. On February 5, 1931, ten days before the expiration of the agreement, defendant's solicitor again requested in writing that the deed be sent him for approval. This letter also evoked no reply. In the meantime, defendant had, after some difficulty, procured the removal of the tenant from the premises. This tenant on removal, whether by accident or design, caused certain damage to the property. As February 15, 1931, was Sunday, the last day for settlement in accordance with the agreement was, by operation of law, February 16, 1931. On February 13, 1931, plaintiffs' attorney informed defendant's

solicitor that an appointment for settlement had been made for February 16, 1931, at 3 P. M. Meeting defendant's representative at the appointed hour, plaintiffs' attorney complained of the alleged damage to the property, and was told that an adjustment in the purchase price might very possibly be made. Plaintiffs, however, ignored the tentative offer of adjustment and for the first time demanded a deed from the association, defendant herein. Defendant's solicitor, holder of the record title, offered to make a deed from himself to plaintiffs as contemplated by the settlement certificate. This offer was flatly refused and oral notice of rescission immediately given by plaintiffs, followed by written notice on the next day, February 17, 1931. No opportunity was given the officers or board of directors of the defendant corporation to consider plaintiffs' demand for a deed by the association and to comply with the demand. The corporation did not refuse to supply such a deed. A substantial offer of adjustment for the alleged damages having been unconditionally rejected by plaintiffs, defendant, on March 21, 1931, gave notice of its election to retain the deposit money. Plaintiffs thereupon brought the present suit for its recovery.

The written rescission of February 17, 1931, recited several alleged grounds therefor: (a) Lack of legal title in defendant; (b) failure of officers of defendant to attend the settlement, and consequent inability to convey on the date set; (c) inability of defendant to deliver possession, and (d) allegation of certain damage to the property subsequent to the agreement of sale.

The last-mentioned damage obviously offers no basis for rescission. The rule laid down in the early case of Richter v. Selin, 8 S. & R. 425, 440, has been uniformly followed in all later decisions: "Where a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold and the purchaser as a trustee for the vendor for the purchase money. So much is the vendee considered, in contemplation of equity, as actually seized of the estate, that he must bear any loss that may happen to the estate between the agreement and conveyance, and he will be entitled to any benefit which may accrue to it during the interval, because by the contract he is the owner of the premises to every intent and purpose in equity."

In connection with the damage admittedly suffered, it will be noted that neither the oral nor the written rescission recited any offer to reëstablish the status quo ante, a step which would seem to be essential. See Young v. United States Housing Corp. of Penna., 86 Pa. Superior Ct. 341, 349, wherein is quoted with approval the familiar rule laid down in Pearsoll v. Chapin, 44 Pa. 9, 12: "In an action . . . for the purpose of recovering back anything, as on the rescission of a contract, the very first thing to be done after showing that the plaintiff parted with the thing in pursuance of the contract alleged, is to show that the plaintiff has rescinded the contract by doing or offering to do all that was necessary and reasonably possible to restore the parties to the condition in which they were before the contract, and then to show that he had good grounds to rescind it. This the order demanded by the very nature of the action."

However, the alleged damage and the other grounds for rescission need scarcely be closely considered at this time, in view of the fact that at the trial the issue was by common consent restricted to whether plaintiffs were entitled to a return of the deposit money because of the alleged fact that defendant did not have legal title and was, therefore, unable to convey on the day fixed for settlement. It is admitted on the record that Leopold merely held title for the use of defendant; that Leopold on the same day that he took title to the property executed to defendant his deed of trust; that on Septem-

ber 15, 1930, the directors of the defendant association by appropriate action authorized Leopold to execute and deliver all instruments necessary to convey title to plaintiffs, and that plaintiffs would, despite the notations on the settlement certificate, have accepted a deed from defendant at the settlement. In other words, "there was in esse, a person seised to the use, a cestui que use, a well-defined use and a seisin out of which it was to issue; and where these exist the statute executes the use. . . ." Moore v. Shultz, 13 Pa. 98.

Applying the rule thus laid down to the facts admitted herein, legal title was in the defendant, notwithstanding Leopold was the registered owner. This conclusion effectually disposes of plaintiffs' contention that defendant, not being the holder of the legal title, could under no circumstances retain the down money. (See, also, Schuman v. Barry, 4 D. & C. 550.)

This conclusion does not, however, completely dispose of plaintiffs' contention that they were entitled to a warranty deed from the association and were consequently justified in rejecting the deed proffered by Leopold. On this point defendant, citing Hascher Bros. v. Haring et al., 47 Montg. Co. Law Repr. 49, argues that the following provision of the agreement, "Title is to be good and marketable and such as will be insured at regular rates by any responsible Title Insurance Company," definitely negatives the idea that conveyance had necessarily to be made by a warranty deed from the vendor. The value of the warranty in a deed is obviously entirely dependent on the individual responsibility of the grantor. The consequent right of the grantee to insist on a conveyance from the grantor of his own selection, rather than from some perhaps irresponsible person, has always been upheld.

It is true that the advent of the title companies has diminished the necessity for warranty by a responsible grantor. In the absence, however, of an express agreement to that effect, the title policy may well be regarded as an additional protection to the grantee over and above his time-honored right to the warranty. This viewpoint apparently underlies the decision in Hopkins v. Phillips, 76 Pa. Superior Ct. 243, 245: "The plaintiff under these covenants was not bound to accept a deed from any grantor other than the defendant; he had the right to have the personal responsibility of the defendant behind the covenants of warranty contained in the deed, no matter whether these warranties were special or general. He could not be required to accept a deed from any irresponsible grantor whom the defendant might select."

That opinion, rendered in 1921, long after the virtually universal employment of title insurance, would seem to indicate that the ability to insure is construed solely as an additional bulwark for the grantee. The agreement of sale in Hopkins v. Phillips, supra, is closely similar to that in the instant case, the minor variations in the language employed being insufficient to destroy the force of the rule so far as it applies to the written contract. It should be noted, however, that in Hopkins v. Phillips there was testimony as to the existence of a parol agreement to accept conveyance from another party. This testimony was flatly denied, and the resolution of the issue thus presented was properly for the jury.

In the case before us there are no disputed issues of fact for the jury. It is admitted that plaintiffs were informed that Leopold held title to the property for and in behalf of defendant; it is admitted that plaintiffs made no objection to the state of the title until the last banking hour of the last day for settlement; it is admitted that plaintiffs' attorney accepted the information sent him by Leopold, and that he forwarded to Leopold the settlement certificate based on this information; it is admitted that several days before settlement plaintiffs were advised by counsel that they had the right to demand a deed from defendant and that no notice of this intention to deviate from

the settlement certificate was ever given to defendant. It is further admitted that despite repeated requests from defendant's solicitor, no deed was ever submitted to defendant until it was physically impossible to comply with plaintiffs' unexpected demands. See Groskin v. Knight, 290 Pa. 274, 277.

The situation here differs widely from that presented in Hopkins v. Phillips, as witness the language of the Superior Court: "What the defendant was intending all the time to do, according to his own testimony, was to have the plaintiff accept a deed from some grantor with whom he had never had dealings:" Hopkins v. Phillips, 76 Pa. Superior Ct, 243, 245.

Plaintiffs' conduct throughout, more particularly, perhaps, the procurement and forwarding of the settlement certificate, is fairly susceptible of the construction that they agreed by implication to accept the deed of the registered owner.

In seeking to rescind, the vendees were very apparently actuated by other reasons than those assigned. There is little difficulty in discerning the lack of good faith, and we believe that the conduct of the vendees with reference (1) to the notation on the settlement certificate of the stipulation that a deed from Leopold was to be delivered, and (2) to the requests of defendant's solicitor for the submission of a deed, and (3) the delay of an arrangement for settlement until the very last business hour of the final day allowed by the agreement, justifies us in giving weight to the well known custom that where title insurance is to be obtained, a vendee seldom attaches any importance to the identity of the grantor to be named in the conveyance.

In view of all of these recited circumstances, we feel justified in holding that where a vendee concludes, after such occurrences, to insist upon a deed being executed by the vendor, it is not unreasonable to require that if this demand for literal compliance with the agreement of sale is delayed until the very last day permitted by the contract, the vendor is entitled to a reasonable additional time within which to furnish its own deed.

Hence, we hold that, under the conditions here present, plaintiffs were under obligation to give reasonable notice to defendant that the contemplated conveyance from Leopold was not acceptable, and this notice was not given.

In Groskin v. Knight, supra, the duplicate certificate was withheld until the day before the settlement, certain unexpected objections having been earlier noted thereon. The vendor being unable, due to the shortness of the time, to obtain their removal, the vendee attempted to use their existence as a ground for rescission. Our Supreme Court, speaking through Mr. Justice Simpson, denied this right to the vendee. "To say that a vendee who has applied for the insurance and obtained the settlement certificate, can hold back from the vendors, as plaintiff here did, all knowledge of the supposed defects in the title until it is absolutely impossible, in the short time remaining, to show that they are not defects at all would make the custom so inequitable and unreasonable as to be outside the pale of the law:" Groskin v. Knight, 290 Pa. 274, 280. Here there was not mere withholding of the certificate—a circumstance which might possibly be said to put the vendor on his guard. There was a procurement by vendees and a delivery by them to the vendor of a certificate definitely requiring a deed from the registered owner (Leopold) to themselves. The analogy with the situation presented in Groskin v. Knight is clear, and the undisputed facts are even stronger. To repeat, the conclusion seems to us sound that plaintiffs by implication agreed to accept a deed from the defendant association, or so misled defendant as to estop themselves from arbitrarily insisting upon technical performance without giving defendant some reasonable time after notice within which to have

a conveyance made to the association by its solicitor and to have executed a deed from the association to plaintiffs.

Plaintiffs' pleadings averred, and plaintiffs' testimony has shown, that defendant has suffered substantial loss through damage to the property; so substantial that an offer of $300 abatement in the purchase price was unconditionally rejected by plaintiffs. There being undisputed testimony to this effect, the ruling in Dorsey v. Berry, 92 Pa. Superior Ct. 195, 197, does not apply.

For the reasons above stated, the motion to take off the nonsuit is denied.