## Horrox v. Duplicki

*Lane H. Daylor,* for plaintiffs.

*William H. Lamb,* for defendants.

KURTZ, P. J., February 24, 1972.—This is an action for the specific performance of a contract to sell real estate in which the sellers are plaintiffs. The only issue in the case is whether the sellers were able to convey a title which complied with the title requirements of the contract of sale.

## FINDINGS OF FACT

1. On or about June 7, 1971, plaintiffs agreed to sell to defendants a certain tract of land containing 11 acres, more or less, situate in East Nantmeal Township, in this county, as described in paragraph 6 of plaintiffs' complaint.

2. Said agreement provided, inter alia: "4. The premises are to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER, the following: Mortgage encumbrances, as above mentioned, if any; existing building restrictions, ordinances, easements of roads, privileges or rights of public service companies if any; agreements or like matters of record or easements or restrictions visible upon the ground, otherwise the title to the above described real estate shall be good and marketable or such as will be insured by any reputable Title Insurance Company at its regular rates."

3. Thereafter, defendants engaged the Manito Abstract Company, a representative of Berks Title Insurance Company, to insure said title and conduct the settlement.

4. In due course, said company prepared a title

report concerning said tract, and among other things showed thereon the following: "Subject to mining rights as set forth in D. B. F-2/466 insofar as same may affect premises in question (attached)." The attachment referred to indicates that there is a deed of record in this county in Deed Book F-2 at page 466 dated November 17, 1789, recorded September 15, 1791, in which Thomas Rutter et ux. and Samuel Potts et ux. are the grantors, and Joseph Phillips is the grantee, conveying 30 acres in East Nantmeal Township, which provides as follows: "Excepting & always reserving unto the said Thomas Rutter and Samuel Potts their heirs and assigns all iron ore now discovered or that shall or may be discovered on the hereby granted premises with free liberty and privilege for them the said Thomas Rutter and Samuel Potts their heirs and assigns and their every of their workmen and servants to enter in and upon the hereby granted premises with horses and carriages and to dig raise and haul all such iron ore away to their own use they doing as little damage to the premises hereby granted as the nature of the case will admit and also they paying to the said Joseph Phillips his heirs executors and administrators at the same rate per acre for what land they do make use of as he now gives them and the liberty and privilege of a certain road or cartway which passes through the hereby granted premises as it is now laid out and used."

5. Plaintiff, Ellen C. Horrox, had purchased a tract, of which the land here involved was a part, from her father in 1960. The father's title had been insured by a title insurance company without any question having been raised as to the mining rights with which we are here concerned. A portion of that which Ellen C. Horrox acquired was sold to one, Lilly, prior to the time of the execution of the instant agreement.

Although Lilly had obtained title insurance upon the tract he purchased, no question was then raised as to the mining rights creating a cloud upon his title.

6. On September 13, 1971, the parties assembled at the office of Manito Abstract Company for settlement. It was at this meeting that plaintiffs first learned of the existence of the mining rights. That company, on the instructions of its principal, the Berks Title Insurance Company, refused to remove the mining rights as an exception upon its title insurance policy. Some discussion took place at that time in which it was suggested that the bank supplying the funds for defendants' mortgage be contacted to see if it would authorize the distribution of mortgage funds even though the exception of the mining rights remained upon the title policy. Efforts to contact someone in authority at that bank proved fruitless. Thereupon the title clerk prepared a handwritten document which was signed by both the buyers and the sellers and reads as follows: "It was understood that I (the title clerk) was to call The Fidelity Bank concerning the mining rights in Deed Book F-2 page 466 if the Bank agreed to take subject to the mining rights I was to make distribution; if the bank does not agree to take subject to the objection I am to return the Duplicki's (sic) check and the mortgage papers to them, the check to the Fidelity Bank, the deed to the Horrox and the down payment check to Rowland Hobson," (the real estate agent).

7. Thereafter, Manito made inquiry of Berks as to whether it would insist upon entering the mining rights as an exception upon its title policy. On September 21, 1971, Berks replied as follows:

"This letter is to confirm that the title policy issued on the captioned case will contain the following certification re: the mining rights set forth in Deed Book

F, Volume 2, page 466, shown as an objection to title on Schedule "B": of the Interim Binder:

" 'Company insures against actual loss which may arise as a result of mining rights as set forth in Deed Book F-2, page 466, Chester County records, but excepts marketability of title by reason of said violation.' "

8. Plaintiffs then consulted the County Abstract Company, an agent for Industrial Valley Title Insurance Company, concerning the marketability of the title and the effect of the mining rights thereon. In a title report which covered October 4, 1971, that company showed the mining rights in the same language as they were shown in the report of Manito. However, it expressed a willingness to insure the title without excepting the mining rights. Indeed, their representative testified at the trial that those rights did not pertain to the tract with which we are here dealing but that they had been imposed upon the title to other land not the subject of this lawsuit. Under date of December 21, 1971, plaintiffs' counsel wrote to defendants' counsel as follows: "I have been informed by Thomas E. Dick, Assistant Vice President of the company (County Abstract), that their Company would remove the mining rights if we provided an affidavit from the Sellers showing that no mining had taken place on the area site for a period of at least twenty-one years."

## DISCUSSION

The issue here joined is whether plaintiffs have shown that they have tendered a title which meets the specifications of the contract. Those specifications call for a title which is "good and marketable *or* such as will be insured by any reputable Title Insurance Company at its regular rates." To meet that issue, plaintiffs called as a witness a man of considerable

experience in the title insurance industry who testified that he had examined an abstract of the title to the tract in question and was of the opinion that these mining rights did not encumber the tract proposed to be conveyed. On the other side of the picture, defendants called two witnesses from the title insurance industry, one of whom admitted that his examination of the title had not been as thorough as had been that of plaintiffs' witness, and the other merely testified that based on his company's experience, it would not insure this title in its existing condition as to "marketability." Parenthetically, it must be noted that neither party put the chain of title into evidence so that the chancellor might have made a factual determination as to that issue.

We must start with the proposition that when an agreement for the sale of real estate calls for the conveyance of a title "such as will be insured by *any* reputable title insurance company," the vendee is not relieved from performance if a single such company refuses to insure: Srolovitz v. Margulis, 35 Pa. Superior Ct. 252 (1908). However, to justify refusal to take title on the ground that it is not insurable, it is not enough to show the title objections were raised on the settlement certificate when first issued by the title insurance company, for a vendor, if given the opportunity, can usually have objections removed by explaining them or otherwise satisfying the doubt raised by the title company. For that reason, it must be shown that at the time of settlement the title was not insurable and that the vendor had been given reasonable opportunity to satisfy the objections. Thus, where the vendee does not furnish the vendor with a copy of the settlement certificate and notify him of the objections required to be removed until the day before settlement, he cannot recover his deposit money upon mere proof of the objections: Ladner, Conveyancing in Pennsyl-

vania, 3rd Ed., §5:16. Indeed, it has been held that the mere annotation by a title company suggesting an encumbrance upon title is not conclusive as to its existence: Groskin v. Knight, Jr., et ux., 290 Pa. 274 (1927); Riling v. Idell, et al., 291 Pa. 472 (1928).

In this case, the only convincing evidence on the question presented is to the effect that the mining rights do not cloud the title of the land to be conveyed. In addition, the record clearly demonstrates that plaintiffs had no knowledge of the existence of the objection until the time of settlement. It has since been satisfactorily demonstrated that a reputable title insurance company would have insured this title. The company which refused to issue unrestricted insurance has not satisfactorily explained its refusal so to do. In those circumstances, we believe that plaintiffs have met the burden of showing that the title they tendered was not only good and marketable but that it was also insurable. Accordingly, a decree nisi in favor of plaintiffs will be entered.

In this case, as in Commodari & Cipriotti, Inc. v. Vincenti & Company, 13 Chester 339 (1965), we have a situation in which the sellers seek specific performance in equity instead of suing in assumpsit for the balance of the purchase price. The drafting of a decree presents some difficulty, since in decreeing specific performance we must, so far as possible, place the parties in the same situation they would have been if the contract had been performed at the time agreed upon. For that reason, the sellers are to be regarded as trustees of the land for the benefit of the purchasers and liable to account to them for rents and profits or for the value of the use and occupation, and the buyers are to be treated as trustees of the purchase money unpaid and are charged with the interest thereon: Candy v. Kean, 159 Pa. Superior Ct. 596, 598 (1946). In addition, the possibility exists of the buyers refusing

to complete the purchase or of their now being unable so to do. For that reason, we must guard against the creation of a situation in which the sellers might come out of the lawsuit possessing both the land and a judgment for the sale price. The decree nisi which we will enter will attempt to take all of these contingencies into account.

## CONCLUSION OF LAW

1. Plaintiffs are entitled to the equitable relief which they here seek.

## DECREE NISI

And now, February 24, 1972, judgment is entered in favor of plaintiffs, Alfred J. Horrox and Ellen C. Horrox, his wife, against defendants, Alexander J. Duplicki and Margaret B. Duplicki, his wife, in the amount of $54,000, with interest thereon at the rate of six percent per annum from September 13, 1971, and until settlement is finally effected, and it is ordered that said judgment may be satisfied by defendants' payment of that sum to plaintiffs upon delivery by plaintiffs to defendants of a deed conveying title to a certain parcel of real estate situate in East Nantmeal Township in this county, more particularly described by metes and bounds in paragraph 6 of plaintiffs' complaint, within 30 days of the entry of a final decree in this cause, which deed shall convey to defendants a good and marketable title free and clear of encumbrances and easements in accordance with the terms of the agreement of sale, and one such as may be insured at regular rates by any reputable title insurance company with the proviso, however, that the mining rights reserved and excepted in a deed dated November 17, 1789, and recorded September 15, 1791, in Chester County, in Deed Book F-2 at page 466, may not be asserted as an objection to title on the part of defendants; it is further ordered that when such

settlement is made, plaintiffs shall account to defendants for the rents and profits which they have collected out of said tract since September 13, 1971, and for the value of the use and occupation thereof if said tract or any part thereof was occupied by them since that date, and they shall be entitled to credit in said accounting for taxes paid thereon since that time; in the event plaintiffs are either unable or unwilling to fulfill the requirements of this decree within 30 days of the date of its entry as a final decree, then the judgment heretofore entered in their favor shall be and the same is hereby declared to be satisfied; in the event defendants are either unable and unwilling to fulfill the requirements of this decree within 30 days of its entry as a final decree, jurisdiction of this matter is retained to the end that proceedings may be conducted to determine the fair market value of the land so that such value may be allowed in favor of defendants as a credit against the amount of the judgment hereinabove entered.

Defendants will pay the costs.