(No. 27553.—

GIBSON - McPHERSON - SUTTER LIVE STOCK COMMISSION Co., INC., Appellant, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed November 19, 1943.*

WHITNEL, BROWNING, LISTEMAN & WALKER, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This case arose under the Illinois Unemployment Compensation Act, and this appeal is brought to reverse a

judgment entered by the circuit court of St. Clair county, confirming an assessment made by the Director of Labor against the appellant corporation. The assessment involves the payment of unemployment compensation contributions based on the alleged salaries received by R. O. McPherson, John D. Sutter and W. W. McClure for the years 1937, 1938 and the first quarter of 1939. These three are the only ones interested in the business conducted by Gibson-McPherson-Sutter Live Stock Commission and the question is as to whether their business was conducted as a partnership or through the medium of a corporation. Those interested claimed that they operated during this period as partners and, if that be true, they would not be liable for contributions based on their own withdrawals. The Director of Labor, appellee, contended that the business was carried on as a corporation and that McPherson, Sutter and McClure were officers and employees of the corporation within the meaning of the Unemployment Compensation Act. Under that province the sums withdrawn by the three would be treated as salaries paid to employees and as such should have been included in the contribution report as wages payable for the purposes of assessment under the act.

On December 17, 1919, a franchise was issued to a corporation by a slightly different name, to transact a livestock commission business. Its paid-in capital was $16,000 and the stock was all held by the original organizers who were elected officers. E. C. Gibson, who subscribed $5000 of the stock, became president; R. O. McPherson, who held $5000 in stock, was elected vice-president; John D. Sutter, holding $5000 in stock, was elected secretary-treasurer, and H. L. Strait, who held $1000 in stock, was assistant secretary. The corporation, through these men, carried on a livestock commission business from the time of its organization until January 1, 1933. The principal and only office of the company

was at the National Stock Yards near East St. Louis. No meeting of the stockholders or directors of the corporation was held during that period but the business was conducted as a corporation. Annual returns were made to the Secretary of State and the company paid the corporate franchise tax each year as well as capital stock taxes. During the summer of 1932, Gibson and Strait withdrew from the business and surrendered their stock certificates, for which the corporation paid them $5000 and $1000, respectively, and the certificates were canceled on the stock certificate book. McPherson and Sutter continued the business of the corporation until January 1, 1933, when they entered into an agreement with McClure to operate the business as equal partners.

W. W. McClure testified that prior to January 1, 1933, he was employed by the corporation as a cattle salesman at a salary of $275 per month; that on January 1, 1933, it was agreed between himself, McPherson and Sutter, that they would operate the livestock commission business as equal partners, each having a one-third interest in the business and each sharing equally in the profits or losses. McPherson and Sutter testified as to the partnership agreement of January 1, 1933, and stated that from January 1, 1933, to date of hearing the three men had an equal voice in the business and had divided the profits of the business monthly, each taking one third. They stated that on January 1, 1933, the corporation owned the office furniture, some accounts and cash in the bank.

McPherson and Sutter, who owned the entire outstanding corporate stock, regarded themselves as owning the corporation property equally. They testified that they loaned the use of the office furniture to the new partnership. McClure claimed no interest in the corporation property such as office furniture. The corporation was dissolved in March, 1939, and the assets distributed to McPherson and Sutter.

The appellee contends that these three operated the business as agents and officers of the corporation and not as partners, and places reliance upon the fact that the office furniture used in the business was, during the period in question, owned by the corporation; that income tax returns for the years in question were made on corporate forms, and because, as the department claims, the business was conducted in a company name, that the corporation was kept alive by the filing of annual returns to the Secretary of State and by the payment of franchise and capital stock taxes.

The Uniform Partnership Act (Ill. Rev. Stat. 1941, chap. 106½, par. 6,) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." The uncontradicted evidence is that under the agreement of January 1, 1933, McPherson, Sutter and McClure were each to have a one-third interest in the business, and were to share profits and losses equally. John D. Sutter testified that he and McPherson, who, as sole stockholders, regarded themselves as owning the corporation and its property, loaned the office furniture and fixtures, worth about $500 to the partnership. The corporation owned no other property at the yards, and the business was conducted from a one-room office. The fact that McClure did not own part of the furniture and fixtures used in the office did not prevent him from being a copartner of the livestock commission business as a going concern.

Mr. Wiedman, who had worked as office manager since March, 1932, testified that while he had only a practical experience in bookkeeping and did not keep the record with C.P.A. exactitude, he tried to make the books reflect as nearly as possible the situation of the three men. He stated that, before he was hired, a public accountant had made the income tax returns for the corporation, and that in succeeding years corporate Federal income tax forms came

in the mail and that he made out the returns on the corporate forms, although he admitted that he should have used partnership forms. The witness stated that it would not make any practical difference which form was used because when he reported all the profits as paid out, one third to each of the partners, the return showed that there was no profit and no tax, the same as a partnership return would show that the profits had been divided and no tax due. He said that the partners reported the amounts received on their individual returns. This witness further testified that up to January 1, 1933, McClure was paid a monthly salary of $275, which was listed in the bookkeeping under the salaries of regular employees while after January 1, 1933, money paid to him was listed under officer's salaries, or partner's salaries, and was in various amounts beginning in January, 1933, with $159.86, the amounts always representing one third of the month's profits. Perhaps the bookkeeping, which was a continuation of the corporate bookkeeping, was not technically exact, and the practice of filing corporate Federal income tax returns for the partnership may have been lax, but it would not preclude the existence of a partnership as the uncontradicted evidence of the three partners shows.

Various letterheads, invoices, checks, deposit slips and other business forms were introduced to show that a company name was used in the conduct of the business. The appellant was incorporated as "Gibson-McPherson-Sutter Livestock Commission Co., Inc." After January 1, 1933, business stationery carried several names, including: "Gibson-McPherson-Sutter Livestock Commission Merchants;" "Gibson-McPherson-Sutter Commission Company," "Gibson-McPherson-Sutter Livestock Commission Co.," none of which are identical to the corporate name. The fact that the business forms used by the partners carried a company name and indicated the officers, and the fact that the names "Gibson-McPherson-Sutter" were

continued would not be conclusive that there was a corporation. It was a circumstance to consider with all the other evidence. Sutter testified that the old names were continued for business reasons, but that the landlord and bank were notified of the partnership and the market cards showed the partnership McPherson, Sutter and McClure.

The fact that annual corporate returns were filed with the Secretary of State and that franchise and capital stock taxes were paid for the years from 1933 to 1939 would not prevent McPherson, Sutter and McClure from operating a livestock commission business as a partnership. The reason the corporation was kept alive by the filing of returns and the payment of franchise taxes is not material. The corporation was dissolved in March, 1939. No meeting of the stockholders or directors had been held from the date of its organization in 1919 until the proceedings to dissolve in March, 1939.

The purpose of this action was to make an assessment upon corrected unemployment compensation contribution reports filed by the Director and based on the alleged salaries of McPherson, Sutter and McClure. The salaries of no other employees are involved. The evidence shows that these men conducted the livestock commission business as partners, and that the payments they received were as partnership profits and not as employees of a corporation. The decision of the Department of Labor that the business was conducted by the corporation and that it was liable for contributions based upon the withdrawals of McPherson, Sutter and McClure is contrary to the manifest weight of the evidence.

The judgment of the circuit court which confirmed the assessment and quashed the writ of *certiorari* will be reversed and the cause remanded to the circuit court with directions to sustain the writ and set aside the decision and assessment of the Department.

*Reversed and remanded, with directions.*