(No. 29646.—

GEORGE J. DONALDSON, doing business as Donaldson Floor Co., Appellant, *vs.* ROBERT L. GORDON, Director of Labor, Appellee.

*Opinion filed September 18, 1947.*

JAMES BERRY, of Rockford, for appellant.

GEORGE F. BARRETT, Attorney General, of Springfield, (ALBERT E. HALLETT, of Chicago, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The Director of Labor made a determination that George J. Donaldson, doing business as Donaldson Floor Co., was liable for the payment of unemployment contributions for the years 1937 and 1938, and upon review by the circuit court of Winnebago county the determination of the Director of Labor was sustained. Donaldson appeals directly to this court under the provisions of section 25 of the Unemployment Compensation Act. Ill. Rev. Stat. 1945, chap. 48, par. 242.

The facts in the case are substantially as follows: Donaldson had a franchise for the sale of the products of the Flexotile Floor Co. of Rockford, Illinois. His territory consisted of the State of Iowa, a substantial portion of the State of Michigan, and all of Illinois outside of the city of Rockford. He kept his office with the Flexotile Floor Co., but was not an employee of the company. The Floor company manufactured a floor covering, which was attached by cement and leveled and polished into shape by certain equipment owned by Donaldson. His arrangement with the company was to go through the territory assigned to him, finding persons who desired such a floor, make an estimate of the costs of installation, purchase and pay for the product manufactured by the Flexotile Floor Co., and, with his own men, install it and collect the purchase price.

After a time the territory became too large for him to handle alone, and from time to time he made arrangements for the assistance of P. W. Hopkins, Henry Arndt, Earl L. Sandy and Stanley Wahlstrom. His relation to these men is the subject matter involved in this case. If these four men come within the provisions of the stat-

ute defining "employment," Donaldson would have more than eight employees, and be subject to the payment of contributions.

The evidence discloses that Donaldson entered into a written contract with each of these four men. The arrangement with them was identical, so we will examine the contract made with P. W. Hopkins, which will determine the construction of all. This contract provided that Hopkins have an exclusive license for a certain part of the State of Iowa, Chicago, and part of Cook county, and permission to make sales in Rockford. He was declared to be an independent contractor. Hopkins would find a customer, make a survey of the premises, and offer to do the job for so much money, which offer was then submitted to Donaldson, who had the right to accept or to reject it. Hopkins also had the right to sell any other noncompetitive house installations. No certain hours or days of work were required, and he made no reports, bore all of his own expenses, transportation, meals, advertising, telephone, and wages of assistants or salesmen, and was to receive no allowance whatsoever from Donaldson for such expenses; he was not to be controlled or directed in the solicitation of business, and could call upon customers at his discretion. He could make no false promises with respect to the floor material, or damaging statements as to a competitive product, and would pay for all samples furnished to him. He also had the right to employ assistants or salesmen, to be under his exclusive control, and their salaries and expenses were borne exclusively by him.

Under this contract the first party (Donaldson) was to carry out and perform the contracts proposed by Hopkins, when accepted by Donaldson. The installations were under the exclusive control of Donaldson, and Hopkins had no obligation whatsoever in that respect. After the floors were finished, and the money collected, it was disposed of as follows: The costs of installation, including

labor, material, transportation and all other costs, were deducted from the gross amount received from the sale. Among these costs was an allowance of three cents per mile for the use of Donaldson's truck. After these items had all been deducted from the sales price the remaining amount was divided equally between Donaldson and Hopkins, and if there was a loss in the installation, under the contract it was shared equally by each of them.

The evidence shows this arrangement was carried out. Each party paid one half of the social security and unemployment contributions for the men hired by Donaldson to lay the floors. After they had been in operation for some little time the Flexotile Floor Co. required Donaldson to pay sales tax that had accrued in the past, which was paid equally by Donaldson and his associate who had made the sales in Illinois. The evidence shows that during all of the time he worked at this business Hopkins carried out this arrangement implicitly. From time to time losses occurred, and these were shared by Donaldson and the individual procuring the contract under which the loss accrued. The Director of Labor held that Donaldson was liable to make unemployment contributions for the services of these men, working under these contracts.

Appellant takes the position that the contract arrangement between himself and Hopkins, and others, was such that he, Donaldson, was not an employer, and Hopkins was not rendering service for wages, or under a contract for hire. Employment means "service * * * performed for wages or under any contract of hire, written or oral, express or implied." (Ill. Rev. Stat. 1937, chap. 48, par. 218, sec. 2(f)(1).) The term "service" is not defined in the act. The term "wages" means "every form of remuneration payable for personal services whether payable directly or indirectly, including salaries, commissions, bonuses, and the reasonable money value of all remuneration payable in any medium other than cash." (Ill. Rev.

Stat. 1937, chap. 48, par. 218, sec. 2(g).) The service must be rendered to an employing unit, which differs from an employer principally in the number of employees. Par. 218, sec. 2(d).

To be liable to make the contributions it is necessary that there be an employing unit. (*New, York Life Ins. Co.* v. *Murphy,* 388 Ill. 316.) "Employing unit" is defined as "any type of organization * * * which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within the State." There is more to the paragraph, but it has nothing to do with the definition of an "employing unit." In the present case, in order to create a liability for contributions, Donaldson must be an employing unit with eight individuals rendering service, which would require Hopkins, Arndt, Sandy and Wahlstrom to make that number. Ill. Rev. Stat. 1937, chap. 48, par. 218, sec. 2(e)(1).

The briefs contain considerable discussion as to whether the relationship between the parties was a partnership, an association, or otherwise, but the critical point for determination is whether the relationship constituted employment as defined by the statute.

Wages have been defined, as used in the Unemployment Compensation Act, to include only that remuneration paid for the personal services which the employee furnishes the employer. (*Panther Creek Mines, Inc.* v. *Murphy,* 390 Ill. 23.) In the case cited, we held that the legislature intended to define wages as including only that which came from the employee's personal efforts. The question arose because the amount the employees expended in the purchase of powder and supplies from the mining company, which, under their contract with the mining company, they were to furnish, was deducted from the total due for digging coal, and the claim was made that the contribution should be based upon the entire amount

earned rather than on the net wage after the deduction of the powder-and-supplies charge, as per the contract of the employees. We held that the powder charge should not be considered a part of the wages, although furnished by the employee.

We have likewise held that a contract of hire means to engage or purchase the labor or services of anyone for compensation or wages, as to hire a servant, an agent, or an advocate. (*Ozark Minerals Co.* v. *Murphy*, 384 Ill. 94; *Gibson-McPherson-Sutter Live Stock Com. Co.* v. *Murphy*, 384 Ill. 414.) In a case where a business was conducted by three individuals as partners we held contribution for unemployment benefits was improperly required by the Director. *Live Stock Com. Co.* v. *Murphy*, 384 Ill. 414.

When we examine the facts in the present case we find that all that Donaldson did was to grant each of these four individuals a license to sell goods in territory controlled by him. The parties to whom the licenses were issued contacted the ultimate purchaser, took the measurements of the floor, made the proposal in dollars and cents, and forwarded it to Donaldson, who either accepted or rejected the same. If it was accepted, Donaldson took his crew of men, truck and materials, and did the work, purchasing the material with his own funds and paying his workmen who laid the floor. From the total sum that was received for the job, the wages of the men who laid the floor, the costs of the material, and the cost of social security and unemployment compensation paid for these men, as well as in some instances the sales tax, were deducted. The amount remaining was then divided fifty per cent each, and all of the expenses of every kind incurred by the person procuring the contract were covered by the fifty per cent of the net profits, and in case there was a loss, instead of receiving any return for his work and

services he contributed to pay one half of the loss.

It is not necessary to determine whether this arrangement was an independent contract, an association, a co-partnership, or a profit-sharing agreement. The point is whether Hopkins and the others were rendering service for wages or under a contract of hire. Wages imply a fixed sum for services rendered without deduction, or under conditions, or the possibility of loss from the engagement, and without taking into consideration whether the employer will make or lose money by the transaction. Under this section of the statute, a contract of hire necessarily implies a contract for the hire of services. It is merely another method of expressing the fixed or certain amount that shall be received for the services rendered to the employing unit. It necessarily implies that the amount to be received is fixed in the contract, or a method provided by which it can be fixed. Such is not the situation here. There were two independent elements necessary to complete the transaction out of which the money arose. Donaldson might never owe Hopkins because there might never be a net profit. The only part Donaldson was absolutely required to pay for was the materials and the men he employed to lay the floor, with the other necessary expenses connected therewith. But if there was no profit Hopkins would receive nothing and might be required to reimburse Donaldson for a part of the cost of installation. In effect he took a gamble that the contract would be profitable, and to share in the profits. This, as we said in *Live Stock Com. Co.* v. *Murphy,* 384 Ill. 414, is not money derived from wages, or from a contract of hire.

There is another circumstance to be noted in this case. The parties were governed by a written contract. Both parties were interested in the territory to be served, one by franchise from the manufacturer of the floor material, and the other by a license under the franchise. In that

particular territory they had exclusive rights, and while it is possible that it might not embrace all of the elements of a statutory partnership, it comes within the purview of that part of the statute which gives the general definition of a partnership as an association of two or more persons to carry on as co-owners a business for profit. Ill. Rev. Stat. 1945, chap. 106½, par. 6(1).

Appellee says there is no community of interest. The facts, however, show that they do have a community of interest in the territory. Appellant as well as his associates could operate in limited territory, only. The Flexotile Floor Co. assigned a large part of three States to Donaldson, and he in turn parceled it out by licenses to the four individuals whom the State claims were employees. They were likewise owners of the profits, and as another element of partnership neither of them received a salary. Their interests were solely in the earnings above all costs.

The contract between the parties required joint action to develop the sales territory,—one to find the work, the other to perform it,—and neither received any compensation unless there was a profit. This does not meet with the conception of wages or money received under contract of hire. Since the parties are jointly interested, one as essential as the other, there is neither an employing unit nor one rendering service to an employing unit, which is necessary under the act. (*New York Life Ins. Co.* v. *Murphy*, 388 Ill. 316.) Neither of these elements exists here, because one is as much a principal as the other.

We have given considerable weight to a contract arrangement between the parties when it is governed by a written contract, and in *Gabel Mfg. Co.* v. *Murphy*, 390 Ill. 455, we held that where there is an unambiguous contract in writing it must be given the consideration its words imply, and nothing can be added to or taken away from it to ascertain the intention of the parties. To the

same effect is *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94, and both are followed by *Aluminum Cooking Utensil Co.* v. *Gordon,* 393 Ill. 542.

In the case before us, the contract recites that the person obtaining the order is under no control whatsoever. He can work when he pleases; he receives nothing for his time or his expenses; his compensation consists of a share of the profits, if any; otherwise he receives nothing. Certainly this does not come under the common acceptation of services for wages, or a contract of hire; nor does it come under the statutory definition of wages as noted above, as it does not pertain to personal services, nor to a share in the amount received from joint efforts. In view of the fact that these earnings are from a limited territory licensed to Hopkins, or to one of the others, and the contract requires the procurement of a purchaser on one part, and the furnishing of material and labor on the other part, as prerequisites to any compensation, it seems clear that the parties were not intended to be within the term "employment" as defined in the Unemployment Compensation Act.

The contention that the Director is barred from making any claim for present contributions because it was formerly decided that they were not payable under the act, need not be considered, since our present holding that they were improperly assessed renders this question moot.

The order of the circuit court of Winnebago county is reversed, with directions to enter an order overruling the Director of Labor, and finding that appellant is exempt from making contributions under the provisions of the Unemployment Compensation Act.

*Reversed and remanded, with directions.*