## Albus *v.* Toomey, Appellant.

*Custom—Trade custom—Particular custom—Modification of contract by custom—Essential attributes of valid custom—Reasonable time — Presumption — Actual notice or knowledge — Evidence — Province of court and jury.*

1. A usage or commonly called custom so long persisted in as to be known and practiced by a community, is the law of the particular business in which it exists.

2. It must be certain, continuous, uniform, notorious and reasonable.

3. The parties must be presumed to have known it and acted in reference to it.

4. There is no such thing as discretion in trade usages or customs, they are absolute or final, unless set aside by agreement or statute.

5. Where it appears that the custom or usage has been lately established, with but few instances of its recognition, or it lacks other qualities to make it enforceable, the court should determine its nonexistence without submitting the question to the jury.

6. The custom should be universal and uniform with respect to the territory covered by it, so that knowledge may be presumed.

7. It must appeal to the courts as being reasonable, fair between persons engaged in the particular business, and not imposing unusual or oppressive conditions, or restrictive of the free and unlimited exchange of commodities.

8. Particular customs are such as prevail in some county, city, town, parish or place.

9. Knowledge of a local or particular custom may be shown by the receipt of actual information of the subject or from evidence of circumstances upon which an implied knowledge may be found.

10. Where a person lives outside the place affected by a custom, presumptive knowledge does not apply, and actual knowledge must be shown.

11. A custom of not examining dress goods until two or more months after their purchase, will not be sustained as a valid trade custom, where the evidence shows that it was unlimited in extent of territory, uncertain in its terms, indefinite as to the imperativeness of its operation, obedience being more a matter of grace than compulsion, and that it was not so universally practiced as to be notorious; and especially is this so, where the custom is set up by a resident purchaser against a nonresident seller of merchandise.

12. A party will not be permitted to write into a written contract a usage or custom that greatly modifies its terms, and extends what is ordinarily considered in law as an unreasonable to a reasonable time, unless he establishes the existence of such custom by evidence that is clear, certain and precise, and such as leaves no doubt in the mind of the court as to the existence, scope and extent of the custom.

Argued January 12, 1922. Appeal, No. 116, Jan. T., 1922, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1918, No. 115, on verdict for plaintiff, in case of Nathan W. Albus v. Cornelius P. Toomey. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ. Reversed.

Assumpsit to recover damages alleged to have been suffered by reason of defective character of goods purchased from defendant, and which were paid for. Before SHOEMAKER, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $1,750.89. Defendant appealed.

*Error assigned,* among others, was refusal of judgment for defendant n. o. v., quoting record.

*Alfred T. Steinmetz,* with him *George Wentworth Carr,* for appellant.—The custom sought to be introduced in this case is not only unreasonable, but exceedingly harmful in a condition such as exists here, in that the

defendant after sixty days, might and probably would be prejudiced in making any claim from his vendor, the manufacturer, as to the merchandise which he purchased and sold to plaintiff, and further the custom is in derogation of the statutory obligations of the vendor defined by the Sales Act: Corcoran v. Chess, 131 Pa. 356; Ambler v. Phillips, 132 Pa. 167; Lockney v. Police Beneficiary Assn., 217 Pa. 568.

In order to establish the validity of a custom or usage, it must have existed so long as to have become generally known, and it must be clearly and distinctly proven: Silliman v. Whitmer, 11 Pa. Superior Ct. 243; Miller v. Wiggins, 227 Pa. 564.

*Davis S. Malis,* for appellee.—Plaintiff's evidence disclosed a custom notorious and uniform throughout the trade: Samuel v. Steel Co., 264 Pa. 190.

Opinion by Mr. Justice Kephart, February 13, 1922:

Defendant, a New York jobber, purchased merchandise from a mill and sold it to plaintiff, a Philadelphia manufacturer of ladies' dresses. Two months after the goods were received and paid for, plaintiff, through his agents, inspected them, and, finding they were deficient in quality, complained to defendant the goods were not as warranted. No remuneration having been received, plaintiff instituted this suit to recover for breach of the warranty; on verdict and judgment in his favor, defendant appeals.

Plaintiff in the court below successfully relied on a custom or trade usage as excusing his neglect to have the goods examined within a reasonable length of time. "A custom so long persisted in as to be known and practiced by a community, is the law of the particular business in which it exists": Adams v. Pittsburgh Ins. Co., 95 Pa. 348, 356. It is essential, before a usage,—combining numerous repetitions of acts extending over a considerable period of time,—may be denominated a custom,

that it be certain, continuous, uniform and notorious. Nor does the operation of an established usage or custom depend upon the gratuitous assent of any individual. It must be a rule, peacefully acquiesced in, to govern the conduct of persons in relation to a given matter,—so certain and uniform as to be not only valid and enforceable in a court of law, but the parties must be presumed to have known it and acted in reference to it: Corcoran v. Chess, 131 Pa. 356, 359; Bubb v. Parker & Edwards Oil Co., 252 Pa. 26, 31. If the consent or permission of one of the parties is necessary before the custom or usage can be effective, it is not a rule of conduct, binding alike on both parties, regardless of consent,—it is not a trade usage or custom. There is no such thing as discretion in trade usages or customs. They are absolute and final, unless set aside by agreement or statute.

A custom must be continuous in that it should have existed without interruption, as controlling the subject-matter affected. While these and other elements are ordinarily for the jury, yet where it appears the custom or usage has been lately established, with but few instances of its recognition, or it lacks other qualities to make it enforceable, the court should determine its nonexistence as a custom without submitting the question to the jury.

It should be universal and uniform with respect to the territory covered by it, so that knowledge may be presumed. It must be certain, not one thing to one person and something else to another. It must appeal to the courts as being reasonable, fair between persons engaged in the particular business, and not imposing unusual or oppressive conditions, or restrictive of the free and unlimited exchange or sale of commodities.

Particular customs are such as prevail in some county, city, town, parish, or place. Knowledge of a local or particular custom may be shown by the receipt of actual information of the subject or from evidence of circumstances upon which an implied knowledge may be found; but where a person lives outside the place affected by a

custom, presumptive knowledge does not apply and actual knowledge must be shown: Miller v. Wiggins, 227 Pa. 564, 569.

To establish the custom, Albus, plaintiff, living in Philadelphia, testified that, in the twenty-two years he had been in the business of manufacturing ladies' wear, there was a custom in the trade as to the time when goods were to be examined,—such custom was known to the people who buy and sell woolens to and from manufacturers, and the custom was to "buy the goods three months ahead before he needs them to cut the piece; he never examines them and never sponges them, but puts them in stock, and when he gets ready for a piece, he takes out the goods and sends them to an examiner and sponger, and puts them in a different place, ready to be cut......The custom is to examine the goods when a manufacturer gets ready to make up the samples." Even though the goods were paid for and held as long as six months, it was the custom in the business to examine the goods when needed for manufacture, and not the custom to examine immediately, because "we buy from reliable people." When further questioned by the court as to the custom of time limitation within which an examination should be made, he replied "about sixty days."

If we are to assume some sort of custom was in existence for twenty-two years, there was no evidence to show the extent of the one here contended for. If it was intended to cover all such transactions in the eastern states, or part of them, so that it could be said to be a general custom, it should have been so stated. It might have been limited to the City of Philadelphia, but, as defendant is a New York jobber, it could not have affected him unless he knew of it. The so-called custom is not as precise and certain as a rule of conduct should be that is intended to govern a designated subject-matter, uncertain in that the right to inspect may be in sixty days in some instances, in others six months, as they "deal with reliable people." All this is contrary to the

express elements of a good custom. The character of the people, reliable or unreliable, has nothing to do with its operation,—a custom governs all alike engaged in the line of business affected. The evidence does not show how prevalent the custom has been; sufficient detail of its existence is lacking to warrant a court or jury in declaring it to be notorious. If six months is the time limit, it is unreasonable, as injecting confusion into validly subsisting obligations. If such contracts are to be influenced by evidence of this character, our mercantile dealings will stand on a flimsy foundation.

In further support of the custom, witness Melnicove does not attempt to speak of its continuousness or extent, and fixes a different period of time within which goods may be returned. His evidence indicates it is a matter of grace rather than right. Koplin's testimony is lacking in the same particulars, more especially with respect to the element of discretion or right. When asked, "Is that the custom of the trade," he answered, "Well, it seems to be. They tolerate it." While he dealt in various cities, he does not attempt to plant his custom in those cities except inferentially. Written contracts cannot be lightly set aside by uncertain evidence of usage or custom. It should be clear, certain, precise, and leave no doubt in the minds of the court as to its existence, scope and extent. Koplin fixes a standard different from other witnesses as to the time within which goods may be returned. Uditsky does not attempt to fix any length of time, nor the extent of the custom; nor does he attempt to imply knowledge to defendant, assuming him to be a nonresident, and limits the knowledge to the manufacturers and the mills, and not to jobbing houses.

Plaintiff is here undertaking to write into a written contract a usage or custom that greatly modifies its terms, and extends what is ordinarily considered in law as an unreasonable to a reasonable time; it is an effort to wipe out a substantial right of defendant. A jury, from the evidence here introduced, could not have found

a definite, fixed custom or trade usage good in all its parts, such as is required to control the affairs of men. It was indefinite in extent of territory, uncertain in its terms, indefinable as to the imperativeness of its operation, obedience being more a matter of grace than compulsion; and it was not so universally practiced as to be notorious.

To sustain a custom, all these matters must be shown, unless judicial notice can be taken of them. Plaintiff presents no reason in law that excuses his neglect to inspect the goods within a reasonable time, to determine their quality; he was not entitled to recover for any supposed breach of warranty. The court below was in error in not directing a verdict for defendant.

The judgment of the court below is reversed and it is directed that a judgment n. o. v. be there entered for defendant.