The **PARKWAY BAKING COMPANY,**
Inc., Plaintiff,

National Bakers Services, Inc., Involuntary Plaintiff,

v.

**FREIHOFER BAKING COMPANY,**
(Inc.), Defendant,

William Freihofer Baking Company,
Additional Defendant,

National Bakers Services,
Additional Defendant.

Civ. A. No. 21443.

United States District Court
E. D. Pennsylvania.

June 24, 1957.

824

Paul & Paul, Philadelphia, Pa., for Parkway Baking Co.

Andrew R. Klein, Synnestvedt & Lechner, Philadelphia, Pa., Maurice J. Frager, Jersey City, N. J., for National Bakers Services.

Wm. Steel Jackson & Sons, Philadelphia, Pa., for W. Freihofer Baking Co.

KIRKPATRICK, Chief Judge.

The complicated procedural aspects of this case have encumbered the really important issue with a mass of minor matters, all of which are dealt with in full in the answers to the parties' requests. Only the briefest reference to the facts is needed for the discussion which follows.

Parkway holds an exclusive license from National (the owner of the secret formula and the trademark) to bake and sell "Hollywood" bread in the city of Philadelphia. Wm. Freihofer holds an exclusive license covering the city of Allentown. The Parkway license does not, as does the Wm. Freihofer license, expressly prohibit Parkway from selling outside the territory allotted to it, but Parkway does not dispute that its license should be construed as though it did.

The prohibition in the Wm. Freihofer license is against selling "directly or indirectly" but there is no special point, so far as this case is concerned, in distinguishing between selling directly and indirectly. There is no dispute that if Parkway sold its bread from its own trucks in Allentown it would be violating the terms of its license. Nor can it very well be disputed that if it sold through a dummy or an agent or a wholly owned subsidiary the result would be the same whether the sales be termed direct or indirect.

In May 1956 Parkway, which had theretofore been delivering bread in its own trucks to retail stores in Philadelphia, entered into a requirements contract with American Stores under which Parkway delivered Hollywood bread baked by it to American Stores at the latter's warehouse platform. Parkway did so with the knowledge that American Stores would send a considerable portion of the bread to its retail outlets outside the Parkway territory, particularly in Allentown.

The question involved is whether Parkway's sales to American Stores are in violation of the license which it holds from National or in brief, whether Parkway is selling its Hollywood bread in Allentown.

█ There is no evidence whatever in the case suggesting that the sales agreement between Parkway and American Stores was a sham or a subterfuge or that it was collusively entered into merely to enable Parkway to invade Freihofer's territory, nor is it even suggested that Parkway did or could exercise the slightest control over American Stores in the matter. American Stores proposed the arrangement, because it wanted to get its requirements of Hollywood bread from a single source and at one price. The sales were bona fide bulk sales made at arm's length and, in fact, made by Parkway when it was confronted with the prospect of losing all of American Stores' business if it did not comply. I, therefore, find that, as a

fact, Parkway was not selling in Allentown, either directly or, if the term adds anything, indirectly.

█ Wm. Freihofer, in addition to its argument that Parkway's sales to American Stores constituted indirect selling in Allentown, contends that they were infringements by Parkway of the "Hollywood" trademark. Actually, the argument falls with the finding, just stated, that Parkway does not sell in Allentown, for the following reasons:

It may be conceded that Parkway's right to use the trademark on its bread does not exist in connection with sales by it in territory in which it was not licensed and that if, without National's permission, it sold trademarked bread outside of its territory, it would be breaching its contract. Whether it would also be infringing the trademark is an entirely different question.

Any case against Parkway for trademark infringement could only be for a sort of contributory infringement, based upon the theory that American Stores is infringing by selling Parkway-baked bread in Allentown and that Parkway is making it possible for it to do so. Of course, if we were dealing with a patent monopoly and the bread sold by American Stores infringed the patent, the argument would be sound, but the rights of a trademark owner are quite different from those of a patentee and it seems clear that American Stores is not infringing any trademark, as trademark infringement is defined in the Lanham Act, 15 U.S.C.A. § 1051 et seq.

██ The Lanham Act, 15 U.S.C.A. § 1114, requires that the alleged infringing use must be "likely to cause confusion or mistake or to deceive purchasers as to the source of origin" of the goods. It is the purchasers of goods who must be confused or deceived. Not only was there no substantial evidence of confusion as to source of origin in this case, but it is difficult to see how there could be any. The "source of origin" of Hollywood bread is National, which con-

trols the mix, the formula and the packaging. There is no question that the bread which American Stores sells in Allentown is Hollywood bread, conforming in every respect to the standards for ingredients and quality set up by National. There can be no source of origin of Hollywood bread, within the meaning of the Act, other than National. If a trademark "represents more than one source it ceases to be a trademark", Nims, Unfair Competition and Trademarks Vol. I, page 122 (1947). Very slight, barely noticeable, differences in texture, flavor and slicing between the Parkway bread and the Wm. Freihofer bread, stressed by counsel for Wm. Freihofer, have not been shown to my satisfaction to have produced any confusion in the minds of purchasers and, even if they did, it would not be a confusion as to the source of origin. Obviously, no case can be based upon a theory which depends for its validity upon Wm. Freihofer's being the source of origin of the Hollywood bread which it bakes. If it could, National would have no trademark.

The resale of trademarked goods is, to a certain extent, controllable by contract. National, in the license which it gave Parkway, might have prohibited such sales to third parties as would be made with the knowledge that such parties would take the bread out of the licensed territories to sell it and, if it had, an action for breach of contract by National might lie. But see United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024. However, Parkway's license contained no such term.

Wm. Freihofer and National endeavor to write such term into the contract, first, by evidence of what they allege to be a trade custom or usage. As to this, I can only say that the credible evidence offered, in my judgment, falls far short of meeting the exacting burden upon one who attempts to add to the terms of a contract by proof of custom or usage. See Albus v. Toomey, 273 Pa. 303, 116 A. 917. Much of the testimony offered on this point really came down to the individual opinions of lay witnesses as to the legal effect of the license agreement and, as such, was worthless.

Second, there was a suggestion that Parkway itself had interpreted the contract by agreeing, on a few occasions, not to sell to some "bobtailer" or independent trucker, when advised that he was selling outside Philadelphia and also protesting such sales made in its territory. Such evidence is, of course, relevant but, in my judgment, falls short of establishing the point. There is nothing to indicate that there was ever anything like a showdown on the matter. The sales involved were few and trivial in amount. To add a new and unwritten term to a contract, the evidence should be convincing. In general, courts are reluctant to construe a contract in a way which would give it the effect of restricting the free and unlimited exchange or sale of commodities. In this case I am asked to go one step further and add such a restriction by implication rather than by an interpretation of an existing term.

I find that Parkway's license includes no term either express or implied prohibiting bona fide sales to third parties, whatever may be the known purpose of the purchaser as to reselling.

National, as well as Wm. Freihofer, is asking for an injunction against Parkway based upon Parkway's sales to American Stores. For the reasons just stated, I am of the opinion that Parkway has not violated its license agreement with National and that National's case against it must be dismissed.

National's case against Wm. Freihofer stands on a different basis. While Philadelphia Freihofer is not a wholly owned subsidiary of Wm. Freihofer, it can hardly be disputed that it is completely controlled by it. Wm. Freihofer admits that it has sold its bread, through Philadelphia Freihofer, extensively in the territory licensed to Parkway, stating quite frankly that it

was a matter of retaliation for what it considered Parkway's wrongful sales to American Stores. I find that Wm. Freihofer was, at the time this suit was brought, selling Hollywood bread in Parkway's licensed territory. It follows that it has violated its license agreement with National and that National is entitled to an injunction against it.

It remains to dispose of certain controversies between the parties which, I cannot but feel, are of comparatively minor importance.

■ 1. Parkway will not be granted an injunction on its claim against Philadelphia Freihofer based on violation of Sec. 43(a) of the Lanham Act. There was a technical violation, but it was entirely due to a mistake which has been corrected, it did Parkway no harm and the whole thing is de minimis.

■ 2. I find no evidence to support the cause of action pleaded by Parkway based on an alleged malicious attempt to destroy Parkway's business. When Wm. Freihofer started large-scale selling in Philadelphia, its motive was to force a showdown on the matter of Parkway's American Stores sales. Its action was wholly without justification, but I cannot find in it the elements of maliciousness necessary to support Parkway's charge of unfair competition on this count. This cause of action may be dismissed.

■ 3. Parkway's case against Wm. Freihofer stands on the same basis as National's case. Parkway is the party injured by Wm. Freihofer's invasion of its territory. Its remedy may be asserted against Wm. Freihofer either on the theory that it is National's exclusive license or that it is a third-party beneficiary of the license contract between National and Wm. Freihofer. Inasmuch as National is not injured by such sales, it is obvious that the agreement was for the benefit of its exclusive licensees. Parkway has sustained its case on this issue.