The **PARKWAY BAKING COMPANY,**
Inc. (Plaintiff), National Bakers
Services, Inc. (Plaintiff),

v.

**FREIHOFER BAKING COMPANY (Inc.)**
(Defendant) William Freihofer Baking
Company (Additional Defendant), Na-
tional Bakers Services, Inc. (Additional
Defendant), National Bakers Services,
Inc., Appellant.

The **PARKWAY BAKING COMPANY,**
Inc. (Plaintiff), National Bakers
Services, Inc. (Plaintiff),

v.

**FREIHOFER BAKING COMPANY (Inc.)**
(Defendant), William Freihofer Baking
Company (Additional Defendant), Na-
tional Bakers Services, Inc. (Additional
Defendant), The Parkway Baking Com-
pany, Inc., Appellant.

Nos. 12405, 12406.

United States Court of Appeals
Third Circuit.

Argued Jan. 21, 1958.

Decided May 21, 1958.

George B. Christensen, Chicago, Ill. (James L. Perkins, Chicago, Ill., Andrew R. Klein, Philadelphia, Pa., Winston, Strawn, Smith & Patterson, Chicago, Ill., Synnestvedt & Lechner, Philadelphia, Pa., on the brief), for National Bakers Services, Inc.

Henry N. Paul, Jr., Philadelphia, Pa. (Wallace D. Newcomb, James C. McCon-

non, Philadelphia, Pa., Paul & Paul, Philadelphia, Pa., on the brief), for The Parkway Baking Co.

Joseph Gray Jackson, Philadelphia, Pa. (Edward Lovett Jackson, Philadelphia, Pa., William Steell Jackson and Sons, Philadelphia, Pa., on the brief), for Freihofer Baking Co., Inc.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and WRIGHT, District Judge.

BIGGS, Chief Judge.

The Parkway Baking Company [Parkway] holds an exclusive license from the National Bakers Service, Inc. [National], the owner of a secret formula for the baking of a low calorie bread and of the trademark "Hollywood", to bake and sell "Hollywood" bread in the greater Philadelphia area.[1] The William Freihofer Baking Company [William Freihofer] is National's exclusive "Hollywood" licensee in an area north of the Parkway territory in which lies the City of Allentown, Pennsylvania. The Freihofer Baking Company of Philadelphia [Philadelphia Freihofer], a subsidiary of William Freihofer and subject to the latter company's control, is not licensed by National to use the "Hollywood" trademark in any area.

Prior to May 1956, both William Freihofer and Parkway sold "Hollywood" bread to individual store units of the American Stores, a large chain grocery which operates stores in both the Parkway and William Freihofer territories. In May 1956 the American Stores desiring to purchase all of its Hollywood bread from a single source at one price entered into a requirements contract with Parkway. Under the terms of this contract, Parkway was to deliver "Hollywood" bread to the platform of the American Stores' warehouse which was located within the Parkway exclusive territory.

1. "A. The Company [National] shall (or hereby does): 1. Grant to the Bakery [Parkway] the use of its services and the exclusive right to bake and sell 'Hollywood Bread' in the following territory. City of Philadelphia and territory five miles outside corporate limits; city of Camden, New Jersey and territory laying within a radius of 20 miles south of Camden City Hall, also 20 miles southeast and east, but 15 miles north and northeast, all in New Jersey."

Although this contract was entered into by Parkway with the knowledge that a substantial quantity of its bread would be reshipped by the American Stores to retail outlets in the William Freihofer Allentown territory there is no substantial evidence that this sales agreement was a subterfuge entered into merely to enable Parkway to invade William Freihofer's area. Nor is there any evidence that Parkway did or could exercise any control over American Stores.

When Parkway's "Hollywood" bread appeared for sale and was sold in William Freihofer territory, William Freihofer immediately protested to National which requested Parkway to stop these sales. Parkway, faced with the choice of continuing the platform deliveries to the American Stores' warehouse or losing the American Stores business, continued the deliveries. William Freihofer then decided to retaliate. It entered an agreement with its wholly owned subsidiary, Philadelphia Freihofer, whereby "Hollywood" bread was sold to Philadelphia Freihofer in Allentown, and would then be brought to the Philadelphia area and distributed throughout that territory by Philadelphia Freihofer.

During this period of retaliation the William Freihofer "Hollywood" bread was not wrapped in its customary wrapper bearing the designation "William Freihofer Baking Co., Allentown, Pa." but instead was wrapped with a label bearing the designation Freihofer Baking Co., Philadelphia, Pa.[2] The trial court found that the disparity between the usual label and that used during the period of retaliation was caused by an error on the part of William Freihofer or the printer and was not consummated intentionally. This finding [3] is fully supported by the record. But the label indicated that Philadelphia Freihofer was licensed to bake and sell Hollywood bread. The two assertions were false.

Accordingly, Parkway brought the present action against Philadelphia Freihofer alleging a violation of Section 43 (a) of the Lanham Act, 60 Stat. 441 (1946), 15 U.S.C.A. § 1125(a).[4] William

**2.**

| *Wm. Freihofer label* | *The Erroneous label* |
|---|---|
| William Freihofer Baking Co. | Freihofer Baking Co. |
| Allentown, Pa. | Philadelphia, Pa. |
| Reg. Penna. Dept. Agr. | Reg. Penna. Dept. Agr. |
| FREIHOFER'S HOLLYWOOD | FREIHOFER'S HOLLYWOOD |
| ® Weight 1 lb. | ® Weight 1 lb. |
| Hollywood ® Licensed by National Bakers Services, Inc., Chicago | Hollywood ® Licensed by National Bakers Services, Inc., Chicago |

3. See Finding 1., of the opinion of the court below, 154 F.Supp. at page 827.

4. Section 43(a) of the Lanham Act provides:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or de-liver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

The court below correctly stated its jurisdiction as follows:

"The cause of action, insofar as Parkway and Freihofer is concerned, is for trademark infringement and unfair competition and jurisdiction of this Court with respect thereto is based upon 15 U.S.C. § 1125(a), 15 U.S.C. § 1121, 28 U.S.C. § 1338(a), 28 U.S.C. § 1338(b) and upon diversity of citizenship between

Freihofer was permitted to intervene as a party defendant pursuant to agreement. Rule 24(b), Fed.R.Civ.Proc. 28 U.S.C. National had refused to join in the complaint with Parkway and therefore was joined by Parkway as an involuntary party plaintiff. Rule 19(a), Fed.R.Civ.Proc. 28 U.S.C. National then entered a general appearance in the case and filed claims against Parkway and William Freihofer alleging that both baking companies had violated their license agreements. National's claims proceeded on the theory that the licenses barred the licensees from making sales within their territories knowing that purchasers were buying for resale and distribution within the exclusive territory of another licensee.

The trial court found that Parkway's license allowed it to make bona fide sales and deliveries to an independent purchaser within its exclusive territory regardless of its knowledge that some of the bread would be sold later by that independent purchaser within the exclusive territory of William Freihofer. The court below also found that since William Freihofer's sales in Philadelphia were made through its controlled subsidiary, Philadelphia Freihofer, these were not bona fide sales and that therefore William Freihofer had violated its license. Accordingly, the trial court enjoined William Freihofer from invading the Parkway territory through sales to Philadelphia Freihofer for resale within Parkway's territory. The trial court also found that inasmuch as National was not injured by such sales and since the license agreements are for the benefit of the exclusive licensees, that Parkway could recover against William Freihofer on the theory that it was a third party beneficiary of the license contract between National and William Freihofer.

The cause was referred to a master for the purpose of ascertaining the damages. The trial court also found that there was a technical violation of Section 43(a) of the Lanham Act by Philadelphia Freihofer, but found such violation to be *de minimis* and therefore awarded no damages and did not issue an injunction. 154 F.Supp. 823.

Parkway, at our No. 12,406, appeals from the refusal of the District Court to grant Parkway an injunction and an accounting against Philadelphia Freihofer for its alleged violation of Section 43(a) of the Lanham Act. National, at our No. 12,405, appeals from the ruling that Parkway did not violate its license when it sold to the American Stores. Other claims, cross claims and counterclaims were asserted. They were dismissed, however, and the orders of dismissal have not been appealed from. We will not encumber this opinion by setting out these pleadings.

## I. National's Counterclaim Against Parkway

The question involved in this appeal is whether Parkway's sales to American Stores are in violation of the license which it holds from National, or in brief, whether Parkway is selling its Hollywood bread in Allentown.

As the rights and duties of licensor and licensee are determined by the terms of their contract, this question can be resolved only by an interpretation of that instrument. As we have said, the contract between Parkway and National gave Parkway the right to bake and sell "Hollywood" bread in the Philadelphia area. The writing contains no restriction against bona fide sales to an independent vendor within the exclusive territory, even though Parkway has knowledge that the vendee, American Stores, will resell the bread within the

Parkway and Freihofer, and the fact that the amount in controversy exceeds $3,000 exclusive of interest and costs.

"National's causes of action against Freihofer, Wm. Freihofer and Parkway are for breach of contracts, and jurisdiction of this Court with respect thereto is based upon diversity of citizenship between National and Freihofer; National and Wm. Freihofer; and National and Parkway; and the fact that the amounts involved in the controversies between these parties in each case exceeds $3,000 exclusive of interest and costs."

exclusive territory of another. National, however, argues that under Illinois law we would be required to read such a restriction into the contract. Parkway contends that we are precluded from applying Illinois law because: (1) the contract was entered into in Pennsylvania; (2) National did not raise the issue of Illinois law in the court below which decided the case under the law of Pennsylvania, and (3) National failed to give any notice of foreign law as is required by the Pennsylvania Judicial Notice Act, Act of May 4, 1939, P.L. 42, 28 P.S.Pa. § 294.

At the threshhold, therefore, we are faced with the question of which law to apply in interpreting the contract. Although there is evidence in the record that Medina, National's Vice-President signed the Parkway license agreement in Philadelphia, the license itself contains the statement that it shall be in effect "only upon acceptance by the Company at its offices in Chicago, Illinois." There is also a recital on the agreement that National "has caused this agreement to be executed * * * attested * * * and its corporate seal affixed at Chicago, Illinois." So far as the record shows it appears that the last act necessary for the formation of the contract occurred in Illinois.

This, therefore being a case where the litigation is in one state and the operative transaction in another it is the duty of the federal court to apply the conflict of laws rules of the state where the case is being tried. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. The Pennsylvania rule in contract cases is that the interpretation of the instrument is determined in accordance with the law of the place of contracting, and that is the place where the last act necessary for the formation of the contract occurred. Field v. Descalzi, 1923, 276 Pa. 230, 120 A. 113; Wilson v. Homestead Valve Manufacturing Co., 3 Cir., 1954, 217 F.2d 792; McLouth Steel Corp. v. Mesta Machine Co., 3 Cir., 1954, 214 F.2d 608. In

this case, therefore, we must apply the law of Illinois.

Neither the failure of National to raise the issue of Illinois law below, nor its lack of compliance with the Pennsylvania Judicial Notice Act can bar our application of Illinois law on this appeal. Parkway's concern with the requirements of the Judicial Notice Act was precisely answered in Lamar v. Micou, 1885, 114 U.S. 218, at page 223, 5 S.Ct. 857, at page 859, 29 L.Ed. 94, wherein it was stated that, "The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof." See, also, Hanley v. Donoghue, 1885, 116 U.S. 1, 6, 6 S.Ct. 242, 29 L.Ed. 535; Gallup v. Caldwell, 3 Cir., 1941, 120 F.2d 90; Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 1947, 164 F.2d 290, 293; Mills v. Denver Tramway Corporation, 10 Cir., 1946, 155 F.2d 808; Wigmore, Evidence § 2573 (3rd ed.); 3 Beale, The Conflict of Laws § 624.1; 5 Moore, Federal Practice § 43.09. And National cannot be considered to have waived its right to have the contract interpreted under the proper law by failing to raise the question in the District Court. Pecheur Lozenge Co. v. National Candy Co., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; United States v. Certain Parcels of Land, etc., 3 Cir., 1944, 144 F.2d 626; Faron v. Penn Mutual Life Ins. Co., 3 Cir., 1949, 176 F.2d 290; Long v. Morris, 3 Cir., 1942, 128 F.2d 653, 141 A.L.R. 1041; Harry L. Sheinman & Sons v. Scranton Life Ins. Co., 3 Cir., 1941, 125 F.2d 442. It is clear, therefore, that the law of Illinois governs the interpretation of this contract.

In Illinois the intention of the parties to a contract is determined by the language of the contract itself, and the courts may not construe into a writing provisions that are not there. Ambarann Corp. v. Old Ben Coal Corp., 1946, 395 Ill. 154, 69 N.E.2d 835; Donaldson v. Gordon, 1947, 397 Ill. 488, 74 N.E.2d 816; Saddler v. National Bank of Bloomington,

1949, 403 Ill. 218, 85 N.E.2d 733. What is more, contracts which restrict the free and unlimited exchange of services or commodities are strictly construed, Tarr v. Stearman, 1914, 264 Ill. 110, 105 N.E. 957; United Romanian Meat Market & Grocery Store v. Abramson, 1920, 218 Ill. App. 577, and the restrictions will be extended no further than the language of the contract absolutely requires. Wiggins Ferry Co. v. Ohio & M. Ry. Co., 1874, 72 Ill. 360; Bentley v. Merchants Matrix Cut Syndicate, 1946, 328 Ill. 589, 66 N.E.2d 493. Applying these legal principles to the Parkway contract, we cannot construe the terms of that writing so as to add a term precluding a sale and delivery of "Hollywood" bread to American Stores within Parkway's territory, regardless of any use the American Stores will make of the bread after they receive it.

 National, however, attempts to add the restrictive term by way of custom and usage. The court below found that the credible evidence offered by National as to this point fell far short of establishing a custom or usage in the baking trade, and the record supports such finding. A usage or custom to be binding must be so uniform, long-established, and generally acquiesced in by those pursuing the particular calling as to induce the belief that the parties contracted in reliance upon it. It must be proved by instances of actual practice—a succession of individual facts; and not by the individual opinions of witnesses as was attempted in this case. Traff v. Fabro, 1949, 337 Ill.App. 83, 84 N.E.2d 874; Kelly v. Carroll, 1921, 223 Ill.App. 309; Cleveland, C., C. & St. L. Ry. Co. v. Jenkins, 1898, 174 Ill. 398, 51 N.E. 811; Bissell v. Ryan, 1860, 23 Ill. 566.

Finally, National attempts to sustain its position by a line of Illinois authorities which purportedly interprets ex-

clusive territory agreements as prohibiting sales made within an exclusive territory if the seller knows the goods will be resold elsewhere.[5] None of these cases is apposite. They do not deal with an alleged breach of a license agreement by a sale and delivery within an exclusive territory for resale into another territory, but rather with the failure to pay the commission when a sale is made in another's exclusive territory. What is more, in all but one of the cases relied upon by National, delivery of the goods was made directly into the restricted area. In the one remaining case, Illinois Terra-Cotta Lumber Co. v. Owen, 1897, 167 Ill. 360, 47 N.E. 722, it was held that one could not avoid his obligation to pay royalties by making a contract of sale outside of his licensed territory if the goods were to be used within his territory, when his contract required him to make all efforts reasonable to sell his goods within his particular territory.

We therefore agree with the final determination of the court below that Parkway did not violate its license by selling and delivering bread to the American Stores knowing that American Stores would resell a substantial portion of that bread within Freihofer's exclusive territory. The fact that its determination was posited on Pennsylvania law is inconsequential. Helvering v. Gowran, 1937, 302 U.S. 238, at page 245, 58 S.Ct. 154, at page 157, 82 L.Ed. 224; S. E. C. v. Chenery Corp., 1942, 318 U.S. 80, at page 88, 63 S.Ct. 454, at page 459, 87 L.Ed. 626.

## II. *Parkway's claim under the Lanham Act*

In the appeal at our No. 12,406, Parkway argues that the trial court erred in refusing to grant an injunction and an accounting for damages after having found that Philadelphia Freihofer had

5. Goodman v. Motor Products Corp., 1956, 9 Ill.App.2d 57, 132 N.E.2d 356; Smith Furniture Co. v. Peter & Volz, 1917, 205 Ill.App. 379; Illsley v. Peerless Motor Car Co., 1915, 195 Ill.App. 572, modifying 1913, 177 Ill.App. 459; Marshall v. Canadian Cordage & Manufacturing Co., Ltd., 1911, 160 Ill.App. 114; and Illinois Terra-Cotta Lumber Co. v. Owen, 1897, 167 Ill. 360, 47 N.E. 722.

technically violated Section 43(a) of the Lanham Act, supra, note 4. The court refused to grant the sought for relief because the violation was entirely due to a mistake which had been corrected, and because Parkway was not harmed by the violation.

In Section 43(a) Congress has provided a remedy by way of civil damages or injunction against anyone who, in connection with goods or services in commerce [6] uses a false designation of origin or any false description or representation. 1 Callmann, Unfair Competition and Trade Marks § 18.2(b); L'Aiglon Apparel v. Lana Lobell, Inc., 3 Cir., 1954, 214 F.2d 649. The selling of merchandise under the false representation that it was done under the sponsorship and with the approval of a licensor, certainly falls within the broad terminology of Section 43(a), cf. American Automobile Association v. Spiegel, 2 Cir., 1953, 205 F.2d 771, certiorari denied 1953, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391. The name Philadelphia Freihofer upon the bread wrapper was a false representation that it, Philadelphia Freihofer, was licensed by National to make and sell Hollywood bread in the Philadelphia area. The fact that the name appeared on the wrapper because of a mistake is not a defense to an action under this section for there is no requirement that the falsification occur wilfully and with intent to deceive.[7]

However, a plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public. Gold Seal Co. v. Weeks, D.C.D.C. 1955, 129 F.Supp. 928, 940, affirmed sub nom. in S. C. Johnson & Son v. Gold Seal Co., 1956, 97 U.S.App.D.C. 282, 230 F.2d 832, certiorari denied 1956, 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50; Bechik Products, Inc., v. Federal Silk Mills, Inc., D.C.Md.1955, 135 F.Supp. 570. This does not place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof goes to quantum of damages and not to the very right to recover. However, there must be a showing of some customer reliance on the false advertisement.

In the case at bar, the false designation was in very small print, while the trademark Freihofer's Hollywood was large and clear. There was nothing fallacious as to the trademark. Parkway has introduced no evidence that anyone who purchased "Hollywood" bread with the false designation on the wrapper did so because of the false wrapper, nor is there any evidence that any-

---

6. It is clear that the sales made in Philadelphia and other parts of Pennsylvania of Freihofer bread which had been transported from Allentown, were not in commerce under this section. Samson-Crane Co. v. Union National Sales, Inc., D.C. Mass.1949, 87 F.Supp. 218, affirmed 1 Cir., 1950, 180 F.2d 896; Application of Bookbinder's Restaurant, 3 Cir., 1947, 240 F.2d 365. This portion of the case, therefore, deals only with those limited sales in Southern New Jersey.

7. Section 3 of the Act of March 19, 1920, ch. 104, 41 Stat. 533 which was superseded by Section 43(a) of the Act of 1946, required a showing of wilfulness and intent to deceive. This proof of wilfulness made enforcement of Section 3 practically impossible. Parfumerie Roger et Gallet Societe Anonyme v. Godet, Inc., 17 Trade-Mark Rep. 1, 2 (S.D.N.Y.1926). Accordingly, in a bill introduced by Sena-

tor Ernst in 1928, S. 2679, 68th Cong., 2d Sess. § 30 (1925) the requirement of wilfulness and intent to deceive had been stricken, and these elements were kept out in the Vestal Bill, H.R. 6248, 69th Cong., 1st Sess. § 36 (1926) and in the Lanham Bill.

In the case at bar we need not and do not decide the issue as to whether proof of knowledge of the falsity of the description is required in cases where the accused person causes or procures materials bearing a false description to be transported or used in commerce. It is clear that Philadelphia Freihofer used the false label in connection with Hollywood Bread and therefore its acts clearly fall within the provisions of the class of offenders apparently categorized in the first clause of Section 43(a). This clause does not require proof of specific knowledge of the falsity of the representation.

one would have refused to purchase this bread had they known of the fallacious label. It seems clear that the customers sought a low calorie loaf called "Hollywood" and that is what they received. As was stated in the Gold Seal case, supra, "Section 43(a) was to promote fair business dealings. It was not to provide a windfall to an overly eager competitor." 129 F.Supp. at page 940.

No one will question that Parkway was injured by a direct diversion of sales to William Freihofer during William Freihofer's retaliatory period but that injury, so far as the record shows, does not come by way of false description or representation, rather it was caused by William Freihofer's invasion of Parkway's exclusive sales territory for which Parkway has already received judgment.

■ In cases of injunction, however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive. This seems to be the result desired by Congress in that Section 43(a) confers a right of action upon any person who "believes that he is or is likely to be damaged" by defendant's practices. While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality. Weil, Protectibility of Trademark Values Against False Competitive Advertising, 44 Cal.L.Rev. 527 (1956); Derenberg, Federal Unfair Competition Law at the End of the Lanham Act; Prologue or Epilogue? 32 N.Y.U.L.Rev. 1029 (1957).

■ However, the record is clear that the use of the false label by the Freihofer companies had terminated prior to the rendering of judgment in the court below. The cases are legion which say that where there has been a cessation of the conduct complained of, at any time prior to judgment, it is a matter for the exercise of the discretion of the court, as to whether an injunction should issue. Under the facts of this case we do not believe that the court below abused its discretion.

Accordingly, the judgment of the court below will be affirmed.