**ACCU–SORT SYSTEMS, INC.**

v.

**LAZERDATA CORPORATION.**

Civ. A. No. 92–6240.

United States District Court,
E.D. Pennsylvania.

April 23, 1993.

Anthony S. Volpe, Volpe & Koenig, Philadelphia, PA, for plaintiff.

Keith R. Dutill, David C. Franceski, Jr., Stradley Ronon Stevens & Young, Philadelphia, PA, Phillip X. Murray, Anthony M. Lorusso, Deborah M. Utstein, Lorusso & Loud, Boston, MA, for defendant.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff, Accu–Sort Systems, Inc. ("Accu–Sort"), alleges that defendant, Lazerdata Corporation ("Lazerdata"), violated section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) (West Supp.1993),[1] by incorporating into an advertising brochure false and misleading statements about Accu–Sort's product—a laser scanner capable of reading

---

1. Section 43(a), as amended, provides, in relevant part:

    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

bar codes.[2] In support, Accu–Sort attaches to its complaint a copy of the allegedly offensive brochure and cites to the following language therein:

### RECONSTRUCTION METHODS

Barcode reconstruction methods are based on the fact that, as a barcode moves under the laser's scan line, all of the barcode will eventually be "seen". In theory then, it should be possible to save up all the barcode fragments and then rebuild them into the complete barcode once the label has passed out from under the scan line.

[diagram deleted]

The difference in reconstruction methods involves how these barcode fragments are rebuilt into the whole so that the information encoded in the label is recovered.

There are at least six patents involving different methods of accomplishing this rebuilding task. The method in the widest use currently is covered in patents assigned to Accu–Sort Systems, Inc. and is built into a group of omni-directional and line scanners.

The patented methods use pattern matching to line up each fragment with the fragment before. In other words, the software slides the new fragment along the data which has been previously acquired until the bars and spaces match up.

The dangerous thing about reconstruction technology is the increased risk of mis-reads. Mis-reads become more likely in reconstruction because of the loss of redundancy.

Accu–Sort claims that Lazerdata's characterization of its product as "dangerous" because of an "increased risk of misreads … because of the loss of redundancy" is false and misleading, and Accu–Sort seeks damages, profits, treble damages and profits,

15 U.S.C.A. § 1125(a) (West Supp.1993).

**2.** Accu–Sort has also asserted in this action a claim against Lazerdata for patent infringement. This claim is not relevant to the instant discussion.

costs and attorney's fees. Presently before the Court are cross motions for summary judgment on this claim.[3] For the following reasons, I will deny these motions.

### I.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is *material* will be determined by reference to the "substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Whether a *genuine* issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Id.*

Rule 56 requires opposition to a proper motion for summary judgment to be made by submission "of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Such evidence and all justifiable inferences that can be drawn from it are to be taken as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Such evidence need not be presented in a form admissible at trial. *Id.*

### II.

Section 43(a) of the Lanham Act creates a cause of action for "any false description or representation of a product." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3d Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). "[T]here are two different theories of recovery for false advertising under [this]

**3.** Lazerdata filed a motion to dismiss this claim or, in the alternative, for summary judgment. Because I will consider materials beyond the pleadings, I will consider Lazerdata's motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

Section ... '(1) an advertisement may be false on its face; or (2) the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers.' " *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir.1993) (quoting *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 977 (2d Cir. 1988)). In its motion, Lazerdata contends that it is entitled to summary judgment under either theory. Accu–Sort argues in its motion that it is entitled to summary judgment on the first of these theories. I will consider Lazerdata's motion next.

### A.

The parties agree that Accu–Sort must establish each of the following elements to sustain its Lanham Act claim:

"(1) that the defendant has made false or misleading statements as to his own product [or another's];

(2) that there is an actual deception or at least a tendency to deceive a substantial portion of the intended audience;

(3) that the deception is material in that it is likely to influence purchasing decisions;

(4) that the advertised goods travelled in interstate commerce; and

(5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc."

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d at 922–23 (quoting *Max Daetwyler Corp. v. Input Graphics, Inc.*, 545 F.Supp. 165, 171 (E.D.Pa.1982)).[4] Lazerdata contends that Accu–Sort cannot establish elements 1, 2, 3 and 5.

As to the first element, Lazerdata makes two arguments. First, Lazerdata argues that Accu–Sort's claim fails because the brochure at issue refers only to reconstruction technology generally, rather than any product of Accu–Sort's. Since Accu–Sort's products are not mentioned in the brochure, Lazerdata argues, it cannot be liable under the Lanham Act for any misrepresentation. *See, e.g., U.S. Healthcare*, 898 F.2d at 921

("§ 43(a) encompasses statements made by a defendant about 'his or her or another person's' *products*") (quoting 15 U.S.C. § 1125(a) (emphasis added and omitted)).

Accu–Sort does not dispute that the false or misleading statement must relate to its products, but counters that there is, at minimum, a question of fact as to whether the brochure can be read as referring to its products. After carefully examining the brochure, I agree. I find that a jury reading the brochure could reasonably conclude that the presence of the phrase "[t]he method in the widest use currently is covered in patents assigned to Accu–Sort Systems, Inc." in the same discussion where the technology underlying such methods is referred to as "dangerous" due to an "increased risk of misreads" gives rise to an inference that Accu–Sort's products are inferior ("dangerous") due to an increased risk of misreads. Therefore, I find that Lazerdata has failed to carry its burden of demonstrating that there is no genuine issue for trial on this important question, and I reject Lazerdata's first argument in favor of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (Whether a *genuine* issue of material fact is presented is to be determined by asking if "a reasonable jury could return a verdict for the non-moving party.").

Lazerdata's second argument with regard to the first Lanham Act element is that it is entitled to summary judgment under *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, because Accu–Sort has no evidence that any assertion in the brochure about its products is false. Accu–Sort responds by submitting an affidavit sworn by Mr. David A. Wurz, Manager of Research and Development for Accu–Sort, which states that the language quoted above is misleading and false because

the occurrence of "misreads" is recognized throughout the industry as both a major problem and a major product flaw. Likewise, the statement regarding "the loss of redundancy" is a technical misstatement about Accu–Sort's reconstruction technolo-

---

**4.** If a statement in an advertisement concerning a product is false on its face, however, a plaintiff need not demonstrate adverse impact on the buying public (elements 2 and 3). *See Pennzoil,* 987 F.2d at 943.

gy. In reality, there is a different type of redundancy and not a loss of redundancy.

In essence, Mr. Wurz states that Lazerdata's assertions are misleading because all laser scanners, not just Accu–Sort's, are subject to misreads, and the assertions are false because there is no loss of redundancy in its laser scanners. On a motion for summary judgment, I must take such evidence and all inferences to be drawn from it as true. *See Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. And taken as true, this evidence, though somewhat tenuous, creates a genuine issue of fact for trial as to whether Lazerdata's assertions are misleading or false. Hence, Accu–Sort has carried its burden under *Celotex,* and Lazerdata is not entitled to summary judgment on this ground.

As to the second and third elements of a Lanham Act claim, Lazerdata argues, again relying upon *Celotex,* that Accu–Sort has no evidence with which to establish that the allegedly false or misleading statements contained in the brochure either actually deceive or have a tendency to deceive or are likely to influence purchasing decisions. Accu–Sort responds by submitting evidence in the form of an expert affidavit stating that the statement is deceptive, and an affidavit sworn by a fact witness who states that the statement has actually affected buyer purchasing decisions on at least one occasion.

■ I need not consider the merits of Accu–Sort's submissions, however. The above quoted affidavit of David Wurz creates a genuine issue of material fact as to whether at least one of the assertions in the Lazerdata brochure concerning Accu–Sort's *products* is facially false.[5] As I stated earlier, a plaintiff may make out a case under section 43(a) of the Lanham Act without reference to the advertisement's impact on the buying public if an assertion about a product in the advertisement is false on its face. *See supra* note 4. Thus Accu–Sort need not submit evidence of deception or influence on purchasing decisions to defeat Lazerdata's motion for summary judgment: At a minimum, Accu–Sort's Lanham Act claim must be permitted to pro-

ceed to trial on a theory that the brochure is facially false.

As its final argument, Lazerdata, relying upon *Celotex,* challenges Accu–Sort's ability to establish the fifth element of a Lanham Act claim—injury. Accu–Sort responds with an affidavit sworn by Mr. Michael C. Hrabina, Vice President of Marketing and Sales at Accu–Sort, who states that on at least one occasion an Accu–Sort customer requested that Accu–Sort respond directly to the assertions about Accu–Sort's products contained in the Lazerdata brochure. Section 43(a) of the Lanham Act provides a remedy to one who "is or *is likely* to be damaged by … [false advertising]." 15 U.S.C.A. § 1125(a) (emphasis added). Accepting the statements of Mr. Hrabina as true, as I must, I find that a reasonable jury could conclude from his testimony that Accu–Sort is "likely" to be injured if Lazerdata's assertions are false. That a customer has asked Accu–Sort for a response to Lazerdata's assertions may indicate a likelihood of lost sales if customers find Lazerdata's assertions persuasive. Accu–Sort is not required at this stage to demonstrate particular instances of actual injury. *See U.S. Healthcare,* 898 F.2d at 922 (The requirement that a plaintiff prove injury " 'does not place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof only goes to quantum of damages and not to the very right to recover.' " (quoting *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir.1958)). Accordingly, I find that Accu–Sort has carried its *Celotex* burden as to the fifth element of its Lanham Act claim. Lazerdata's final argument having failed, I will deny its motion for summary judgment.

### B.

Accu–Sort bases its motion for summary judgment solely upon the contention that Lazerdata's brochure is false on its face because it purports to be a "study" (Accu–Sort's word) comparing Lazerdata's and Accu–Sort's products when in fact discovery

---

**5.** Mr. Wurz states that Lazerdata's assertion that Accu–Sort's technology experiences a loss of re- dundancy is untrue.

has revealed that Lazerdata never conducted a "study" of Accu–Sort's products. Accu–Sort argues that because the brochure falsely asserts that a comparative *study* had been performed, it is entitled to judgment in its favor without submitting proof that Lazerdata's assertions concerning Accu–Sort's *products* are false or tended to or actually did mislead consumers.

Accu–Sort is correct that this Court may grant relief under section 43(a) of the Lanham Act "'without reference to the advertisement's impact on the buying public'" if an advertisement is false on its face. *Pennzoil*, 987 F.2d at 943 (quoting *Johnson & Johnson*, 862 F.2d at 977 (quoting *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir.1982))). A plaintiff's burden of proving an advertisement facially false, however, varies depending upon the nature of the challenged advertisement. *See Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir.1992).

> Where the defendant's advertisement claims that its product is superior, plaintiff must affirmatively prove defendant's product equal or inferior. Where ... defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden by showing that the tests did not establish the proposition for which they were cited.

*Id.* Accu–Sort contends that it can carry its burden in this case by simply showing that Lazerdata's purported "study" did not establish its claims of superiority, because no "study" was in fact undertaken. I disagree.

Contrary to Accu–Sort's contention that the Lazerdata brochure purports to be a "study," I find after careful review of the brochure that it contains neither an explicit nor an implicit assertion that tests or studies prove Lazerdata's products superior. Nor has Accu–Sort pointed to any language in the brochure which could be reasonably read by a jury as asserting otherwise. At most, the brochure contains bald assertions, without reference to their source, that Lazerdata's way of laser scanning is better than Accu–Sort's. There is no mention that this proposition has been proven by a test or study, or that a comparison test or study between the two methods has ever been conducted.

■ Implicit in most assertions of superiority, of course, is that some type of comparison between products has been made; but only when accompanied by a claim that tests or studies actually prove superiority do such assertions create an opportunity for plaintiff to carry its Lanham Act burden by simply showing that the tests or studies do not support the assertions. *See id.* at 62–63; *McNeil–P.C.C., Inc. v. Bristol–Meyers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991); *Proctor & Gamble Co. v. Chesebrough–Pond's, Inc.*, 747 F.2d 114, 116 (2d Cir.1984).[6] *Cf. Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir.1990) (holding that "a Lanham Act plaintiff bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof'" (quoting *Proctor & Gamble*, 747 F.2d at 119 (citation omitted)).[7] Because the Lazerdata brochure con-

**6.** *Pennzoil* in not to the contrary. In that case, the Court of Appeals for the Third Circuit upheld a trial court's entry of judgment in favor of plaintiff Castrol for facially false statements made by defendant Pennzoil about the superiority of Pennzoil's motor oil. *See Pennzoil*, 987 F.2d at 944 ("Pennzoil [the defendant] made a claim of superiority [of its product over Castrol's], and when tested, it proved false."). Castrol's claim, vindicated on appeal, was that Pennzoil's product assertions were false, not simply that Pennzoil lacked support for, or substantiation of, those assertions. And Castrol proved Pennzoil's assertions false with its own comparison tests. Thus *Pennzoil* was not a case, as Accu–Sort asserts, where the defendant was held liable under the Lanham Act for falsely claiming that it had conducted certain tests. Nor was

*Pennzoil* a case in which the plaintiff sustained its burden of proving actual deception by merely showing that the defendant's product claims were not substantiated; the plaintiff established that the defendant's product claims were false on their face.

**7.** There may be an exception in cases where claims about the plaintiff's product are completely unsubstantiated. In *Sandoz*, the Third Circuit left open the "question [of] whether *completely unsubstantiated* advertising claims violate the Lanham Act absent proof that consumers are actually misled by this lack of substantiation." (citation omitted) (emphasis in original)). *Sandoz*, 902 F.2d at 228 n. 7. Accu–Sort does not argue that this exception applies here; nor has it

tains no claim that Lazerdata's asserted superiority is established by tests or studies, Accu–Sort must either (1) prove its products equal or superior to Lazerdata's, *see Quaker State*, 977 F.2d at 63, or (2) prove that the brochure contains other false statements concerning Accu–Sort *products* or otherwise misleads consumers, *see Pennzoil*, 987 F.2d at 943. Accu–Sort has attempted neither in its motion for summary judgment, and I will deny the motion accordingly.

presented evidence that Lazerdata's assertions are in any way "completely unsubstantiated." Indeed, there is evidence of record that the author of the Lazerdata brochure was, at minimum, generally familiar with Accu-sort's technology, Lazerdata's technology, and the technologies employed by the laser scanning industry.